Nash, J.
 

 We are relieved from any consideration of the case, growing out of the charge contained in the second count in the declaration. The case, as presented
 
 *362
 
 to us, is confined to . the first count, for it is the error committed, or alleged to be committed by the presiding Judge in considering the case, under that count, to which our attention is directed.
 

 We think his Honor was correct in refusing to give the charge requested, and that he erred in the latter part of his instruction upon this point. The instruction required assumed, that the question was one purely and entirely of law, for it was, “ that the confidential relation existing between the defendant, Mrs. Marsh, and the witness, and the occasion for using the words, rebutted the implication of malice.” This instruction, the Court could not give, because it involved an enquiry of fact, which it was the province of the jury alone to make. And we think his Honor, in instructing the jury “ there was
 
 no evidence
 
 showing such an occasion for speaking the words, or such a relation between the witness and the defendant, as would rebut the implication of malice,” erred, for the same reason, because in this case, malice, was a question of fact for the jury,which his Honor could not decide. lie must have meant, in the latter part of this charge, that, although the mother of Sally Adcock, had requested Mrs. Marsh to advise her daughters, that did not make her communication a privileged one. In this there was error. We hold that it was a privileged communication, if made by Mrs. Marshy in good faith, and of the
 
 bona jides
 
 the jury were the exclusive Judges, and it ought to have been left to them. The idea seems to have been, that the communication was not a privileged one, because the defendant had no interest in the matter, and stood in no relationship to the witness, but was, in every respect, a volunteer. In general, when words slanderous in themselves are uttered of another, whether written or verbal, the law implies malice. But there is a class of cases, in which, although the words are actionable, yet from the relation in which the party publishing ^stands
 
 *363
 
 to the individual, to whom they are published, or to the subject matter, the idea of malice is rebutted, and the words cease to furnish the foundation of an action. These are called privileged communications, that is the party making them, has, in law or in morals, the right to make them; but, if he acted in bad faith, and used his privilege as a cloak, under which to cover his malice, the communication ceases to be a privileged one, and he must answer the consequences. And whenever, in an action for slander, the defence rests upon the question of express malice, on the part of the defendant, the jury are the sole triers. We have found no case exactly like this, but several, in which the principles governing them were similar to those arising here. In
 
 Wright
 
 v.
 
 Woodgate, 2
 
 C. M. & R. 513, and also reported in 1 T. & G. 12, Baron Parke observed, “ the proper meaning of a'privi-. leged communication, is only this : that the occasion, on which the communication was made rebuts the inference
 
 prima facie,
 
 arising from a statement prejudicial to the character of the plaintiff.” The same eminent Judge in the case of
 
 Cockayne
 
 and
 
 Hodgkisson,
 
 5 Car. & P. 543, observes, that “ whenever the writer of a libel is acting under any duty legal, or
 
 moral,
 
 towards the person to whom he writes, his communication is a privileged one and no action, says
 
 Mr. Stephens,
 
 will lie for what is there written, unless tha writer is actuated by malice. 2
 
 Stephen’s N. P.
 
 22, 25. So, in the case,
 
 St&ny-éz Chai-
 
 lartds-rS-Car... &-Bayr-g-34, it was ruled by the Court, that a communication by letter, made by a son-in-law to his mother-in-law, respecting her proposed marriage with the plaintiff and containing imputations upon him, though volunteered, was privileged, from the moral obligation resting upon him to protect her from injury. Many other cases are cited by Mr. Stephens to the same purpose. Was the communication made by Mrs. Marsh to Sally Adcock a privileged one ? She was not connected
 
 *364
 
 with her by any ties of consanguinity, nor had she any personal interest in the matter ; nor was it necessary in order to her protection, that the duty she was discharging' should have been a legal one. Was it a moral one? Can there be a doubt ? What higher moral duty than to warn the young, to guard the innocent, to direct the unwary ? The step mother of Sally Adcock was believed by Mrs. Marsh to be an impure woman, whether justly or not, is not now the question ; and
 
 in
 
 compliance with the request of the departed mother, she made the communication to the daughter. What more perilous situa
 
 tion
 
 could the child of her friend be placed in ? Daily exposed to the contaminating society of a woman, loose in her morals, whose position invested her with a commanding influence over her, if the time and the occasion ever could come, when, obeying the voice of duty, she was to warn the witness of her danger, it had come. Nor could the fact, that the individual, against whose society she was warned, was her step mother, change in the least the obligation of the defendant; the danger to the safety of the witness was by the connection increased in a ten-fold degree, and the obligation on the defendant increased in proportion. It will be recollected, that, in the preceding remarks, we do not, in the most remote manner, mean to be understood to say or intimate, that there was just cause for the opinion, which Mrs. Marsh entertained of Mrs. Adcock; it is not pretended. All we intend, all we mean is, that Mrs. Marsh, holding, honestly, these opinions of Mrs. Adcock, was, by the law, justified in making them known to Sally Adcock; and that her communication, so made, was what is termed, a privileged one. And we farther hold, that without any request from the mother, she would, under the other circumstances, have been justified. When, ho'wever, a communication is shown to be a privileged one, as flowing from a legal or moral obligation, the plaintiff may if he can, prove that it was not made in good
 
 *365
 
 faith, but from malice. If L he succeed in doing so, it is stripped of the protection of the law, and ceases to be privileged. The rule was adopted for the protection of good morals, and must not be perverted to the purposes of vice. But it is the duty of the plaintiff to prove this malice by competent evidence, and it then becomes a question of fact, for the jury. It is their province to say, whether the defendant, in making the communication, has acted
 
 bona fide,
 
 intending honestly to discharge a duty, or whether he has acted maliciously intending to do an injury to the plaintiff.
 
 Patterson
 
 v.
 
 Jones,
 
 15th Com. L. R. 305.
 
 Coxhead
 
 v.
 
 Richards, 52
 
 do. 568. Enough appears in the case, to authorise the Court to treat the communication to the daughter, as so far privileged, as to leave the question of good or bad faith, with which it was made, to the jury, especially as the defendant had desired the witness to inform her father that she might have the benefit of his advice. We think,therefore,it ought .to have been put to the jury, to say, whether the words were spoken to the witness, for the honest purpose of warning an innocent young woman, of the danger to her reputation and morals, from a longer intimate association with one, whom the speaker believed to be a lewd woman, or for the malicious purpose, of aspersing her character. Such ought to have been the instruction given to the jury. His Honor however charged, that there was
 
 no evidence
 
 to rebut the malice implied in law, by speaking of the words. In this we think he erred. If he meant, what the words imply, that there was
 
 no such evidence,
 
 he was manifestly wrong, for it existed in the relation in which the parties, the witness and the defendant, stood towards each other, as stated in the case. If he meant there was not sufficient evidence, then he erred, in taking upon himself the decision of a matter of fact.
 

 It is further urged by the defendant,that the Court erred, in permitting evidence to go to the jury, as to his circumstances. On this question, we concur with his Honor'
 
 *366
 
 Such evidence has been repeatedly admitted in actions of
 
 tort,
 
 to influence the damages to be given. In 2
 
 Star. Ev.
 
 496, it is laid down, that, in an action for malicious prosecution, the plaintiff, with a view t-o vindictive damages, may give in evidence the length of time he was imprisoned, his situation in life, and
 
 his circumstances.
 
 He may also given in evidence the circumstances of the defendant.
 
 Bul. N. P,
 
 13. 2
 
 St. Ev. 252.
 

 The only case, we can find to the contrary is that of
 
 James
 
 v.
 
 Buldington, 25
 
 Com. L. R. 553. 8 Car. & Pay. 589; there, Aldersoít, Baron, ruled out the testimony. He cites no authority for his opinion, and admits it had often been received. The case, which was for criminal conversation, does not show what were the attendant circumstances. In such actions, vindictive damages are not necessaarily given : they are dependant on the circumstances attending the transaction. If the plaintifF, by his negligence, has contributed to his own dishonour ; if he and his wile lived unhappily together, and in other cases of a similar character, he is not entitled to vindictive damages, and the evidence would not be admissible. Such may have been the case, upon which we are commenting. Be that, however as it may, we prefer the opinions previously given as more in accordance with justice and right reason. The object of the law in giving damages, in actions of
 
 tort
 
 is to compensate the plaintiff for the injury he has sustained; and in giving vindictive damages to punish the defendant for his iniquitous conduct. In neither case ought justice to be lost sight of, and in neither case does the law contemplate or intend the ruin of the defendant. Without a knowledge of his circumstances, the jury might give damages against him utterly ruinous, and such, as against another of greater property, would not be felt.
 

 For the error pointed out, the judgment must be reversed, and a
 
 venire de novo
 
 awarded.
 

 Per CsmiAM. Judgment reversed and
 
 venire de novo.