## JULIA E. RIDDELL *vs.* JOHN THAYER.

Franklin.  Sept. 17. — Oct. 23, 1879.  AMES & ENDICOTT, JJ., absent.

In an action for slander, in accusing the plaintiff, a married woman, of the crime of adultery, if the defendant denies that he used the slanderous words alleged, or that he mentioned the plaintiff's name at the time alleged, and further testifies that he did not know the plaintiff before her marriage, his testimony is material to the issue, and evidence of a conversation seventeen months before the time of the alleged slander, tending to show that the defendant did know the plaintiff before her marriage, is competent to contradict his testimony.

In an action for slander, if the slanderous words charged are that the plaintiff, a married woman, is a "bad woman," a "bitch" and a "whore," it is for the jury to determine the sense in which the word "bad" is used; and an instruction that, for that purpose, "the jury may take into account the accompanying words and surrounding facts," is not open to exception.

TORT for slander, in accusing the plaintiff, a married woman, of the crime of adultery, "by words spoken of the plaintiff substantially as follows: 'She' (meaning the plaintiff) 'is a bad woman; she is a damned bitch; she is a God-damned whore'; 'Riddell's wife' (meaning the plaintiff) 'is a whore.'" Answer, a general denial.

At the trial in the Superior Court, before *Pitman*, J., the plaintiff introduced evidence tending to prove that the slanderous words alleged in the declaration were spoken by the defendant of the plaintiff on April 14, 1877, in the defendant's house.

The plaintiff also called as a witness Elisha B. Alvord, and, for the purpose of showing malice on the part of the defendant, offered to prove that the defendant, in the fall of 1875, and before the plaintiff was married, uttered to the witness slander·

ous words of and concerning the plaintiff. This evidence was objected to by the defendant, and excluded. The defendant testified as a witness, and denied that he mentioned the plaintiff's name or used any language about her at the time relied on as the time of the slander; and testified that he did not know her before she was married; and, on cross-examination, testified as follows: "I know Elisha B. Alvord, of Shelburne. I never saw him to speak to him about the plaintiff, in my life. I heard she lived at his house. I did not tell him she was a bad woman. I did not tell him, if Riddell got her, he would take her at second hand. I did not know her." The plaintiff afterwards recalled Elisha B. Alvord, in rebuttal, who testified as follows: "I had a conversation with the defendant in the fall of 1875. I was standing on the sidewalk and he came along and spoke to me." The witness was then asked what the defendant said. The defendant objected to the conversation, but the judge ruled that the testimony was admissible, and the witness was allowed, under the objection of the defendant, to testify as follows : " Mr. Thayer said to me, ' You are about to lose your housekeeper. I said, ' There seems to be a prospect of it.' The defendant said, ' He will have to take her second hand, won't he ? ' I asked what he meant. He said, ' Why, has n't she been living with you three or four months ? ' That is all. He said nothing about her being a woman of bad character."

It was not contended that the words, " she is a damned bitch," were actionable. The defendant requested the judge to rule that the words, " she is a bad woman," were not actionable ; and that they should not be taken into consideration by the jury. The judge asked the plaintiff's counsel if he claimed to include the words, " she is a bad woman," as part of the actionable language; if so, he should so rule; and, the counsel signifying that he so desired, the judge ruled that, if those words were such as the jury understood to import the commission of the crime of adultery, they might so consider them, and, on this point, further instructed the jury as follows: " Words complained of as slanderous are to be understood in their natural and obvious sense, and to receive the construction which the persons to whom they were addressed would ordinarily and reasonably attach to them; and, in determining the sense in

which the words were used and understood, the jury may take into account the accompanying words and the surrounding facts."

The jury returned a verdict for plaintiff; and the defendant alleged exceptions.

*C. Delano,* (*S. O. Lamb* with him,) for the defendant.

*S. T. Field,* (*A. De Wolf* with him,) for the plaintiff.

LORD, J. Two questions only are presented by this bill of exceptions for our consideration : 1. Was the testimcny of Alvord at the time, and under the circumstances in which it was admitted, competent? 2. Was the instruction of the court in relation to the phrase " bad woman " correct?

None of the many nice and difficult questions which frequently arise in trials for slander, as to whether the words offered to show malice are merely substantial repetitions of the slanderous words relied on, and whether they import different offences which are different causes of action, arise in this case.

In relation to the first point presented, the only question is whether the testimony of the defendant was material to the issue; for, if material to the issue, there can be no doubt of the right of the plaintiff to contradict it. The defendant offered himself as a witness, and in his testimony in chief denied that he used the words charged against him in the declaration, and denied that he knew the plaintiff before her marriage. It is certain that his denial of having used the words was material. The further facts to which he testified, that he did not mention her name at the time, and that he did not know her before her marriage, were competent, and were material as tending to support the other part of his testimony, that he did not utter the words; and, being material, were subject to contradiction. The distance in time was not so remote as to render the testimony incompetent, but simply to impair its weight. How far it was calculated to impeach his credit was purely a question for the jury.

Under our system of pleading in actions of slander, the declaration need only allege the words relied upon as proof of a criminal charge; no innuendoes are necessary. " If the natural import of the words is not intelligible without further explana- tion, or reference to facts understood but not mentioned, or parts of the conversation not stated, in either of those cases, after set-

ting forth the words, the declaration should contain a concise and clear statement of such things as are necessary to make the words relied on intelligible to the court and jury in the same sense in which they were spoken." Gen. Sts. p. 666.

It does not appear either that there was anything said other than that charged in the declaration, or that there was anything understood between the parties which was not expressed, making any explanation necessary. In itself, the word "bad" imports no crime, and is not actionable. But the moral and legal quality of the word "bad" may be made entirely clear by its context and the connection in which it is used. If one speaks of a prostitute, and calls her such, and therefore pronounces her a bad woman, or if he says, "She is a bad woman because she is a prostitute," there can be no doubt of the sense in which the word "bad" is used, any more than there can be a doubt of the sense in which it is used if a party says of another, "She is a bad woman, she does not go to church," or, "She is a bad woman because she does not go to church." The party is responsible for the ordinary and natural meaning of language as it would commonly be understood. If the subject of discourse in relation to a female is chastity, the use of the word "bad" might import the want of conjugal fidelity, if the woman were a married woman; and when the charge against a married woman is that she is a bad woman, a bitch, and a whore, the court cannot say, as matter of law, that the word bad does not import a want of chastity, but it is for the jury to determine the sense in which the word was used. And we see no objection to the instruction as given by the presiding judge; when he uses the phrase, "the jury may take into account the accompanying words, and the surrounding facts," he is not to be understood as referring to those unexpressed but understood circumstances which give character to the language used, but simply to those facts and circumstances which attend the uttering, such as time, place, and words uttered. In setting out the words uttered as "bad woman," "bitch," and "whore," there is no necessity for introducing any colloquium that these words were used in reference to her chastity, because the jury might be warranted without such colloquium in finding that the words used, in the connection in which they were used, did of their own force import to

the ordinary hearer the charge of want of chastity, or of the crime of adultery.

We see, therefore, no objection to the instruction of the presiding judge, or to the admission of the testimony of Alvord.

*Exceptions overruled.*