HUDNELL v. EUREKA LUMBER CO.

(Filed October 15, 1903.)

1. LIBEL AND SLANDER—*Corporations—Agency—Non-suit.*

The facts in this action for slander are not sufficient to justify a recovery as against the defendant corporation.

2. LIBEL AND SLANDER—*Privileged Communication.*

Where defendant, on meeting plaintiff, stated to him that he should be careful how he spoke; that others had stated that he had committed perjury, and that defendant, as plaintiff's friend, had tried to stop the prosecution of plaintiff, and defendant alleged that such statement was made in the honest belief that he was performing a moral and social duty toward the plaintiff for his benefit, the statement was privileged.

3. LIBEL AND SLANDER—*Presumptions—Malice.*

Where defendant alleged that he had stated to plaintiff, in the presence of another, that plaintiff should be careful concerning his speech; that others had stated that he had committed perjury, and that defendant had endeavored to stop a prosecution against plaintiff in good faith, a requested instruction in an action for slander that such words were actionable *per se*, unless true, and that the law presumes malice, was properly refused.

ACTION by W. S. Hudnell against the Eureka Lumber Company and George T. Leach, heard by Judge *George A. Jones* and a jury at April Term, 1902, of the Superior Court of BEAUFORT County. From a judgment for the defendants the plaintiff appealed.

*Shepherd & Shepherd* and *E. S. Simmons,* for the plaintiff.
*Rodman & Rodman* and *Small & McLean,* for the defendants.

WALKER, J.    This is an action brought by the plaintiff against the defendants, the Eureka Lumber Company and

George T. Leach, to recover damages for slander. It appears that several criminal prosecutions had been instituted before a justice of the peace against the lumber company for alleged violations of the "log inspection laws," and at the trial of those actions the plaintiff was examined as a witness for the State. He alleges in his complaint that the defendant Leach, referring to the said trial, uttered of and concerning him the following slanderous words: "You have perjured yourself, and unless you stop going down town and perjuring yourself we will prosecute you." The defendant, in the fifth section of his answer, denied that he uttered the words as alleged in the complaint, and averred that he said to the plaintiff, in the hearing of one John Lanier, who was casually present, the following: "It is said you committed perjury at the court-house yesterday, and they are talking about having you arrested, but I advised them not to do so, and I would advise you to be careful what you say." John Lanier, on his examination as a witness for the plaintiff, testified that the defendant said to the plaintiff, in his presence and hearing: "You be careful how you speak or talk down town; they say you committed perjury, and I, as a friend, tried to stop them from prosecuting you." There was much testimony tending to sustain the contention of each of the parties as to what was said by the defendant to the plaintiff in the presence of Lanier.

The defendant testified that he did not intend to charge that the plaintiff had committed perjury, but that he was acting in the protection of his own interest and as a friend of the plaintiff at the time; that he did not wish them to prosecute the plaintiff, and therefore uttered the said words in order to apprise the plaintiff of what had been said and to caution him and put him on his guard, and that what he said was intended only as a warning and as friendly advice. The defendant also pleaded justification. Two issues were submitted to the jury, as follows:

1. Did the defendant Leach falsely and maliciously speak of and concerning the plaintiff the false and defamatory words, as alleged in the complaint?

2. If so, what damage has the plaintiff sustained?

The jury answered the first issue "No."

The Court charged the jury, substantially, that if they found the words set forth in the complaint were uttered by the defendant in the presence and hearing of Lanier, the law implied malice, and they should answer the first issue "Yes," unless they found for the defendant on the plea of justification, and if they found that the words were not so uttered they should answer the issue "No"; that if they found the words were so uttered, but that the defendant was justified in uttering them, they should answer the first issue "No." The Court further charged the jury that if they found that the words were not uttered as stated in the complaint, but that the defendant used the words as stated by himself in the fifth section of the answer or as stated by Lanier, and that in using said words he did not intend to accuse the plaintiff of perjury, but only to inform him of what had been said and to warn and caution him in good faith of the reports that had been circulated about him, then they should answer the first issue "No." The Court charged the jury fully in reference to the second issue, but it is useless to refer more particularly to that part of the charge, as the jury answered the first issue "No," and therefore did not consider the issue as to damages. The plaintiff excepted to the charge of the Court upon the following grounds: Because the Court failed to state the contentions of the parties and to eliminate the material facts and apply the law to them. The plaintiff also excepted to the ruling of the Court by which a non-suit was entered as to the defendant company. We do not think that either of these exceptions should be sustained.

We have only given a bare synopsis of the Judge's charge,

which was full and clear and presented the matters in contro-
versy in such a manner that the jury could not have mis-
understood the real issues and the law applicable to the case.

It is true that a corporation may be liable for the slander
of its agent, under certain circumstances (*Redditt v. Mfg.
Co.*, 124 N. C., 100), but we have carefully examined the
record and have failed to find any evidence that brings the
case within the rule of liability.

The plaintiff entered several other exceptions to the ruling
of the Court, but we do not deem it necessary to consider but
one of them, as the others are, in our opinion, without merit.

The plaintiff, in his ninth prayer, requested the Court to
charge the jury as follows: "That the words set forth in the
fifth section of the defendant's answer are actionable, *per se,*
unless true, and the law presumes that they are false, and also
presumes that they were spoken with malice, and that the
burden of establishing their truth and removing the presump-
tion of malice is upon the defendant; that he must fully
satisfy the jury that the same are true and that the same were
spoken without malice, by a preponderance of evidence. Fail-
ing in this, they should answer the first issue 'Yes.' " The
Court refused to give this instruction, and the plaintiff
excepted. In this connection the Court charged the jury that
if they should find from the evidence that the defendant only
said of and concerning the plaintiff "It is said you committed
perjury at the court-house yesterday," and that two or three
parties were talking about having him arrested, and he (de-
fendant) had advised him not to do so, and had cautioned the
plaintiff to be careful as to what he said, or had used words
to that effect, and the defendant did not accuse or intend to
accuse the plaintiff of perjury, but only to inform him as to
what other persons had said concerning him, and that the
defendant acted in good faith in what he said and did, the

jury should answer the first issue "No." To this instruction the plaintiff excepted.

If the defendant had charged the plaintiff with the commission of the crime of perjury without any qualifying words, what he said would have been actionable, *per se,* and the law would imply malice, and the Court so charged with reference to the use of the words set out in the complaint; but if the defendant had uttered the words in the honest belief that he had a moral or social duty to perform towards the plaintiff, he had what is called a qualified privilege to speak, and if he used the privilege in good faith and solely for the reason and purpose which conferred the privilege upon his statement, the law protects him.    When this privilege exists the defendant must keep himself strictly within its limits if he would claim exemption from a recovery of damages in an action for the alleged slander; and if it appears that there was bad faith or malice on the part of the defendant in the use of the slanderous words, the defendant is stripped of his privilege and becomes liable to the plaintiff in damages, for the law will not permit the privilege to be used as a cloak under which to cover his malice.   Newell on S. & L. (2d Ed.), pp. 389, 476, 477.   It is not necessary that the duty which the defendant supposed he owed to the plaintiff should have been a legal duty or one of perfect obligation.   It is quite sufficient if the words were spoken in the performance of a moral or social duty of imperfect obligation which he honestly believed that he owned to the plaintiff.   Newell, *supra,* p. 389 ; Starkie on S. & L. (Folkhard's Ed.), secs. 670, 671, 672, 679.   We think that this case falls within the principles laid down by the Court in *Adcock v. Marsh,* 30 N. C., 360.   It was contended by the counsel for the plaintiff in that case that the communication made by the defendant, in which she charged the *feme* plaintiff with incontinence, was not a privileged one, as the defendant had no interest in the matter and stood in

no confidential relation to the person to whom the words were addressed, but that the defendant was in every respect a volunteer. But this Court held that if the communication was made in good faith and in the discharge of a moral or social duty, it was privileged. "The proper meaning of a privileged communication," says the Court, citing *Wright v. Woodgate*, 2 C. M. & R., 573, "is only this, that the occasion on which the communication was made rebuts the inference *prima facie*, arising from a statement prejudicial to the character of the plaintiff." And again: "Whenever the writer of a libel is acting under any duty, legal or *moral*, towards the person to whom he writes, his communication is a privileged one, and no action will lie for what is there written, unless the writer is actuated by malice." *Cockayne v. Hodgkisson*, 5 C. & P., 543. The Court further said that while Mrs. Marsh was not connected with the party to whom the words were spoken in the way of advice and caution, by any ties of consanguinity and did not have any personal interest in the matter, it was not necessary, in order to her protection, that she should have been so connected or interested, nor that the duty she undertook to perform should have been a legal one, or, in other words, one of perfect obligation. *State v. Hinson*, 103 N. C., 376; *White v. Nichols*, 3 How. (U. S.), 266. In the case last cited it is said that words spoken in confidence and friendship as a caution are privileged. We conclude, therefore, that if the defendant in this case acted in good faith in speaking to the plaintiff about the imputed charge of perjury for the purpose of protecting his own interest, or for the purpose of cautioning or warning the plaintiff, the words used by him were privileged.

Even if it be true, as contended by the plaintiff, that the charge of the Court in response to his ninth prayer for instructions was not as full and explicit as it might have been, we think it was sufficiently so to enable the jury to fully

understand the questions presented for their decision. We must infer from the charge, when read in connection with the evidence, that the jury found that the words as alleged in the complaint were not those used by the defendant in the presence of Lanier, and that they further found that if the defendant used slanderous words he was justified in doing so, or that the words were privileged, and that the defendant acted in good faith and without malice, and further, that he did not intend to charge that the plaintiff had committed the crime of perjury.

In the view we have taken of the case the Court should not have instructed the jury, as requested in the plaintiff's ninth prayer, that the words which the defendant alleged that he used were actionable *per se* and that the law presumed malice. The Court in its charge presented the case to the jury in accordance with the principles of law applicable to the facts (*Adcock v. Marsh, supra*), and, as we find no error in any other respect, the verdict and judgment must stand.

No error.