McCall v. Sustair.

M. D. McCALL v. J. P. SUSTAIR.

(Filed 27 November, 1911.)

**Slander—Intent—Evidence—Larceny—"Took" and "Stole"—Words and Phrases—Unequivocal Terms—Burden of Proof—Questions for Jury.**

In an action for damages for slanderous words spoken by defendant of plaintiff, the evidence for plaintiff tended only to show that defendant on several occasions had said to others that his brother had caught the plaintiff "taking some pokes of cotton out of his patch the night before," which he (the defendant) believed to be true; that on another occasion the plaintiff and defendant were together with the purpose of the latter to "make up the trouble," the former denying that he had taken the cotton, the latter insisting that he had, from the information his brother had given: *Held,* the evidence was not an unequivocal statement that plaintiff had stolen the cotton, and being capable of a different construction, was properly submitted to the jury, with the burden of proof on the plaintiff to show whether the words, in view of the circumstances under which they were used, naturally imported that the plaintiff had stolen the cotton, and whether defendant so intended to state. *Fields v. Bynum,* 156 N. C., 413, cited and distinguished.

WALKER, J., dissents; HOKE, J., concurs in the dissenting opinion.

APPEAL from *Biggs, J.,* at May Term, 1911, of MECKLENBURG.

The facts are sufficiently stated in the opinion of the Court by *Mr. Chief Justice Clark.*

*McCall & Smith, Burwell & Cansler, and R. S. Hutchinson for plaintiff.*

*Stewart & McRae and Maxwell & Keerans for defendant.*

CLARK, C. J. This is an action for slander, on an allegation that the defendant had charged the plaintiff with stealing cotton, said charge having been made on three several occasions, viz., to John Cochrane, to L. A. Ferguson, and to Charles Simpson. Neither justification nor privilege was pleaded, but a denial of having charged the plaintiff with larceny.

McCall *v.* Sustair.

The issues submitted were:

"Did the defendant speak and publish of and concerning the plaintiff the alleged slanderous words set out in article 1 of the complaint with the intent to thereby charge the plaintiff with the crime of larceny?"

This paragraph alleged that the charge was made to one John Cochrane. The second issue was in the same words as to the alleged conversation with L. S. Ferguson, and the third issue was in the same words as to the alleged conversation with Charles Simpson.

There was no exception to the issues. The judge in charging the jury told them that the charge of larceny need not be made in express terms by declaring that the person is a thief or that he has stolen, but the imputation may be made by the use of any apt words which in connection with the other words and in view of the circumstances under which they are used naturally import that the person spoken of has committed the crime of larceny, and that the words were used in that sense. And further charged them that if they found "from the greater weight of evidence that the defendant spoke to or in the hearing of John Cochrane words which should be reasonably construed to mean a charge of larceny of cotton by McCall from J. P. Sustair, and that defendant intended to charge him with larceny in uttering said words, they would answer the first issue 'Yes.' "

The plaintiff excepted because the judge inserted the words, "and that defendant intended to charge him with larceny in uttering said words."

The plaintiff also excepted because the court charged the jury, "The words, to be slanderous, must have been spoken with the intent to charge the crime of larceny, and the words used under the circumstances must be so understood by the hearers."

The judge used the same instructions, that there must be an intent on the part of the defendant to charge the plaintiff with larceny, in instructing the jury on the second and third issues. This presents substantially the controversy submitted on appeal.

The proof was not that the defendant had used the word "stole," but that he said to Cochrane that his brother had

"ketched McCall taking some pokes of cotton out of his cotton patch the night before." As to the second issue, Ferguson testified that he "told defendant that he didn't doubt that Thomas had lost the cotton, but didn't believe that Dave McCall got it, to which defendant replied, 'I do,' and that defendant further said: 'I believe Dave McCall got it, for Thomas said he had seen him get it.'" As to the third issue, Simpson testified that the "defendant told McCall that he had come down to make up with him," and said, "Now, we have come up here to make up this trouble between you and Thomas about taking Thomas's cotton," to which McCall replied, "I never took any cotton from Thomas or any one else." The defendant replied, "Thomas saw you take it, and you know you got it; Thomas says you got it," and McCall replied that he didn't get it and was very sorry they accused him of getting it and he had not taken cotton from any one.

If the evidence had been that the words used were unequivocal that the plaintiff "had stolen the cotton," then the judge would have been justified in charging the jury that if they believed the evidence they should answer the issue "Yes." But here the words proven were that the plaintiff had "taken the cotton." The judge therefore properly charged the jury that the burden was upon the plaintiff to find whether the words in view of the circumstances under which they were used naturally imported that the persons spoken of had committed the crime of larceny, and that the words were used with the intent to charge the plaintiff with larceny in uttering said words. The words were not an express charge of larceny, because a "taking" of cotton is not necessarily larceny. Whether the use of that word was intended to convey, under the surrounding circumstances, a charge that the defendant had "stolen" the cotton, was a matter which was properly left to the jury.

In *Lucas v. Nichols,* 52 N. C., 36, the Court said: "The words used being ambiguous and capable of a double construction, it was proper for the judge to leave it to a jury to decide under the circumstances whether it was intended thereby to charge the plaintiff with a crime."

The plaintiff contends here that this well-settled principle is

not in point, because only one opinion could be drawn as to the meaning of the language used. But we do not think so, and neither did the jury to whom the matter was submitted. They have found as a matter of fact that the defendant did not intend to charge the plaintiff on either occasion with larceny. We cannot know how far the jury may have been influenced by the fact that if the defendant intended to charge the plaintiff with larceny his conduct in attempting to make up the matter with him would have been the compounding of a felony, and therefore that it was unlikely that he had charged the plaintiff with the felonious taking of the cotton.

No witness testified that the word "steal" was used at any time, but in all the conversations the word used was "take" or "got," which does not necessarily imply a "felonious taking"; and as to the surrounding circumstances, there is the fact that there was an attempt by the defendant and his brother to settle the matter by getting the plaintiff to pay for the cotton. There is also the testimony of the defendant that he did not mean to charge the plaintiff with stealing the cotton and did not think that the plaintiff had stolen it, and had never told any one that he thought the plaintiff had stolen the cotton. In *Hampton v. Wilson*, 15 N. C., 470, *Ruffin, C. J.*, said that unless the words used could bear only one construction "it was for the jury to pass upon the intent, to be collected from the mode, extent, and circumstances of the publication." To same effect is *Studdard v. Linville*, 10 N. C., 474, where the Court laid down the rule, "Words to be slanderous must be spoken with an intent to slander and must be so understood by the hearer." That case has been approved in *McBrayer v. Hill*, 26 N. C., 139; *Pugh v. Neal*, 49 N. C., 369.

The words "took" or "got" being susceptible of more than one construction, the court properly left the question of the intent and meaning of the language to the jury to say whether the hearers would reasonably have construed them as charging larceny of the cotton. "Where in an action for slander the words are ambiguous, but admit of slanderous interpretation, it should be left for the jury to say under all the circumstances what meaning was intended." *Reeves v. Bowden*, 97 N. C.,

32; *Lucas v. Nichols,* 52 N. C., 32. The intent with which the words were used was left to the jury in *S. v. Benton,* 117 N. C., 788; *Webster v. Sharpe,* 116 N. C., 470, and *Hudnell v. Lumber Co.,* 133 N. C., 169.

In *Wozelka v. Hettrick,* 93 N. C., 13, relied on by the plaintiff, the defendant admitted that he spoke the words charged, which were slanderous *per se,* and the Court held that an honest belief in the truth of the charge was not a defense and could be considered by the jury only in mitigation of damages.

In the recent case of *Fields v. Bynum,* 156 N. C., 413, it was not contended that the words spoken were of doubtful import, as in this case, but they plainly and unequivocally charged the plaintiff Fields in the nighttime had burned, not one, but two, sawmills of the defendant. The language there used is set out in the opinion by *Mr. Justice Brown* and is too plain to admit of any doubt as to its meaning. It was not even contended that the words were not actionable *per se.* The defense was that the occasion upon which they were spoken was privileged. The difference between that case and this is plainly manifested in the statement of facts.

No error.

WALKER, J., dissenting: A man's intention cannot, in the nature of things, have anything to do with the slanderous character of his words. He is to be judged by what his words mean, and not by what his secret intention may have been. The law gives an action for slander because of the dangerous tendency of the words. You violate a fundamental maxim of the law when you say that a man may utter words which, on their very face, mean one thing defamatory of his neighbor, and yet another because he did not intend that they should have that meaning. It is not his intent that does the harm, but his actual words. It is a well-known maxim of the law that a man is presumed to intend the natural consequences of his acts. It ignores his hidden purpose and measures his liability by what he has done or said, if it is injurious in its consequences. His secret intention is something intangible and sometimes unprovable, and he must, therefore, be held to have meant what

his words import.  If the doctrine of the majority is to be declared as the law, a man may utter words outrageously derogatory of his neighbor, and unless they constitute what the law regards as a slander *per se,* he is not liable, unless he had the bad motive.  This cannot be the law.  I have the highest authority for saying that it is not.  "In actions for defamation it is immaterial what meaning the speaker intended to convey.  He may have spoken without any intention of injuring another's reputation, but if he has in fact done so, he must compensate the party.  He may have meant one thing and said another; if so, he is answerable for so inadequately expressing his meaning.  If a man in jest conveys a serious imputation, he jests at his peril.  Or he may have used ambiguous language which to his mind was harmless, but to which the bystanders attributed a most injurious meaning; if so, he is liable for the injudicious phrase he selected.  What was passing in his own mind is immaterial, save in so far as his hearers could perceive it at the time.  Words cannot be construed according to the secret intent of the speaker.  'The slander and the damage consist in the apprehension of the hearers.' "  Newell on Slander, p. 301, sec. 22.

In *Belo v. Smith,* 42 S. W., 850, the Court said substantially, that in an action for using defamatory words, it is not so much the idea which the speaker or writer intends to convey, as what he does *in fact* convey.  If the language used may import a slanderous charge, its meaning must be ascertained from the words as commonly understood, and as to how they would impress the bystanders, and not from what the defendant intended by it.  The intention of the speaker is material, not on the question of liability, but only as bearing on the question of damages.  The cases supporting the principle just stated are very numerous, and emanate from courts of the highest authority upon the subject.  *King v. Sassaman,* 54 S. W., 304; *Dunlevy v. Wolerman,* (Mo.) 79 S. W., 1165; *Williams v. McKee,* (Tenn.) 38 S. W., 730; *Short v. Acton,* (Ind.) 71 N. E., 505; *Nicholson v. Rust,* (Ky.) 52 S. W., 933; *Hamlin v. Fautl.,* 95 N. W., 955; *Jackson v. Williams,* (Ark.) 123 S. W., 751; *Hatch v. Potter,* (Ill.) 43 Am. Dec., 88; *Holmes v. Jones,* (N. Y.)

41 N. E., 409. In *Rodgers v. Kline,* 31 Am. Rep. (Miss.), 389, the Court said: "The absence of this intent or purpose does not *per se* exonerate the publishers of the article from responsibility, if in fact such language was used in it as would inflict an illegal injury on plaintiff; for the injury to him would be all the same, whether it was the result of design on the part of defendants or of their carelessness and negligence."

I have not discussed the question whether the words used, being in their nature an unequivocal though not direct charge of larceny, are actionable *per se.* There is authority for saying that they are, and similar words have been held to constitute slander *per se. Estes v. Autrobus,* 13 Am. Dec. (Mo.), 496; *Hinesley v. Sheets,* 63 Am. St. Rep. (Ill. App.), 356; *Alcom v. Bass,* 46 N. E. (Ind.), 1024; *Bornman v. Boyer,* 5 Am. Dec. (Pa.), 380. In *Alcorn v. Bass, supra,* the Court said: "If the words charged, taken in connection with the circumstances under which they are alleged to have been spoken, were calculated to induce the hearers to suspect that the plaintiff was guilty of the crime of larceny, they were actionable. *Drummond v. Leslie,* 5 Blackf., 453. The words alleged to have been spoken by appellant, 'Well, I believe you took it,' were not actionable *per se,* but they might be so by reason of extrinsic facts, including other words spoken in the same conversation." See, also, *Wozelka v. Hettrick,* 93 N. C., 10, which seems to be practically to the same effect.

In this case, the words uttered, under any possible or reasonable construction of them, clearly and unmistakably implied a charge of slander, and they present a very aggravated case. The use of them was the equivalent of saying that the defendant had stolen the cotton, and, therefore, they amounted to a charge of larceny; in other words, they meant that the plaintiff had committed larceny, and nothing else. The law does not permit a man to clearly insinuate, in the presence and hearing of others and in the most insulting way, that his neighbor, who is also present, has stolen cotton, and excuse himself because he did not say, in so many words, and in direct and positive speech, that he had stolen it. The insinuation, under the circumstances, stands for the express charge, for it does just as much harm and tends

to a breach of the peace. If a fight had ensued, we would not hesitate to hold 'the defendant guilty of an affray, because of the provocation he gave. I cannot well distinguish the words in this case from those which were held, at this term, in *Fields v. Bynum,* 156 N. C., 413, to be actionable, except in this respect, that they are more offensive and more significant of a purpose to slander and defame the plaintiff. In that case, the defendant accused the plaintiff of burning the mill, and added that his neighbors believed it, as he burnt it last June; while in this case the defendant plainly accused the plaintiff of stealing the cotton, if his words mean anything at all. What were they? "I have been over to my brother Tom's helping to watch his cotton, as Dave McCall has been taking it"; that his brother had caught him "taking some pokes of cotton out of the patch the night before." He said to plaintiff that his brother had told him he had taken the cotton, and he had better fix it up. This was in the presence of Charles Simpson. Even after plaintiff had denied taking the cotton, he repeated the charge against him, saying: "Thomas saw you take it, and you know you got it," and upon further denial, he persisted in making the accusation. In the *Fields case* there was no more unequivocal charge of arson than in this case of larceny. In both cases the words imputed but one thing, the perpetration of a felony—in the one case, arson, and in the other, larceny; and it is impossible to make anything else out of them. In the *Fields case* the words were not privileged because of the time, place, and manner of using them. That was one question in the case; the other was whether they were actionable, to which we gave an affirmative answer.

But it is said that the issues submitted were those raised by the plaintiff's own allegations and the denials of the answers. I do not so understand the allegations of the complaint. The words are set out with an innuendo, the office of which is to show the meaning and application of the charge, and is merely explanatory of the preceding words. It is said to mean no more than *id est* (that is) or *scilicet* (a word used in pleadings), as introductory to a more particular statement of matters previously mentioned in general terms. Black's Dict. (1 Ed.),

626; 25 Cyc., 449. It is intended to disclose the injurious sense imported by the charge. 25 Cyc., 451. Where the words are actionable *per se* or the meaning of the publication is plain and unambiguous, the use of it is not required, as its peculiar function is to point the meaning of the words. It has no reference to the intention of the speaker who made the charge. It is what he says and his words mean, and not what he intended, that hurts, or makes his victim smart under his plain accusation; and so it has been said that want of actual intent to injure furnishes no legal excuse. Read, then, the complaint in the light of these principles, and we find that nothing is said about intent, but everything about the meaning of the defendant's words, if it was necessary to explain that which was perfectly intelligible. No reasonable man in that audience could have heard the words without *knowing* instantly and without the trouble of thinking, what the defendant meant. It was, therefore, prejudicial error to inject into the issues submitted by the court, the question of intent. The court should have accepted, and submitted to the jury, the issues tendered by the plaintiff. The charge also was erroneous, in that it made the liability of the defendant turn entirely upon the intent with which the words were used, and not upon their meaning and the impression they made and were calculated to make upon his hearers, or, at least, the court laid too much emphasis upon the intent and misled the jury. They may have found the words to have been slanderous, and yet gave the verdict against the plaintiff, because they did not find that he had the intent to slander. This error in the charge is the subject of several of the assignments of error, and permeates the entire charge. It is more pronounced in the instruction, that "words to be slanderous must be spoken with the intent to charge the crime of larceny," which is duly excepted to in the second assignment of error. I do not understand that to be the law, but rather the meaning and effect of the words which are used, without regard to the intent, which would not injure if the words had not been spoken.

My conclusion is that there should be a new trial for the alleged error.

Hoke, J., concurs in this opinion.