### JOSEPH H. VINCENT v. JAMES PACE.

(Filed 29 October, 1919.)

**Slander—Ambiguous Language—Questions for Court—Questions for Jury—Trials—Demurrer.**

When the words alleged to have been slanderously spoken are unambiguous in their meaning, it is for the court to decide whether they admit of a slanderous interpretation; and for the jury to decide whether they

were slanderous to the reasonable apprehension of the hearers, when such words are ambiguous; and it is held, under the circumstances of this case, the words alleged to have been slanderously spoken by the defendant, that plaintiff's wife told defendant that the plaintiff had shut up defendant's chickens and instead of turning them out, at her request, had taken them off and sold them, are sufficient to be submitted to the jury to determine whether, within the reasonable apprehension of the hearers, they charged the plaintiff with the larceny of the defendant's chickens, and a demurrer is bad.

CIVIL ACTION for slander, tried before *Stacy, J.,* at September Term, 1919, of ALAMANCE.

On the call of the cause defendant was allowed to withdraw his answer and demur to the complaint. Judgment sustaining the demurrer, and the plaintiff excepted and appealed.

*W. H. Carroll for plaintiff.*
*Long & Long and Parker & Long for defendant.*

HOKE, J. The complaint, after alleging that Mrs. Sinclair Vincent having become suddenly ill, and continued so until she presently died, defendant had been called to the home as a near neighbor, and thereupon the pertinent facts were further alleged as follows:

"4. That thereafter, to wit, on the 27th day of December, 1918, the defendants James Pace, contriving to injure the plaintiff in his reputation, and to expose him to public hatred, ridicule, and contempt, did falsely and maliciously speak and utter to one Annie Turner Vincent, and to divers other persons, of and concerning plaintiff certain false, defamatory, and scandalous words, as follows:

" 'That when he reached the home of the plaintiff on the night of August 23, 1918, Mrs. Lucinda Vincent called him to her and told him that she was greatly troubled about the defendant's chickens, which she said she and her husband had shut up, and she whispered this in his ear, and told him to have them turned out; but that this plaintiff, instead of turning them out, had taken them off and sold them,' thereby intending to charge, and did charge, the plaintiff with the larceny of said chickens.

"5. That said statement, and every syllable of it, was absolutely false and defamatory, and that by reason of speaking thereof as aforesaid, the plaintiff has been injured in his reputation, fame, and good name, to his damage ten thousand dollars.

"Wherefore, plaintiff prays judgment against the defendant for the sum of ten thousand dollars, for the cost of this action, and for such other and further relief as he is entitled to receive."

In several decisions of the Court in which this question was directly considered, it was held that when the words spoken are ambiguous and fairly admit of a slanderous interpretation, it is then a question for the jury to determine on the sense in which the words were used, and whether they amounted to the slanderous charge to the reasonable apprehension of the hearers. *S. v. Howard,* 169 N. C., 312; *McCall v. Sustair,* 157 N. C., 179; *Reeves v. Bowden,* 97 N. C., 30; *Lucas v. Nichols,* 52 N. C., 32.

In *S. v. Howard,* indictment for slandering an innocent and virtuous woman. Defendant had said, referring to the prosecutrix, "That he had quit his old girl; that Luther Mills was going with her now; she was not a lady; was nothing but a crook, and he could prove it." Held a question for the jury as to the sense in which the words were uttered, and the Court quotes with approval from 25th Cyc., as follows:

"It is the province of the Court to determine what constitutes libel or slander abstractly. Hence, if the language is plain and unambiguous, it is a question of law whether or not it is libelous or slanderous. But, if the language is ambiguous and susceptible of two meanings, one defamatory and the other not, it is for the jury to decide in what sense it was used; however, it is for the court to determine whether or not the language, on its face, is capable of a double meaning, and should be submitted to the jury for construction. It is the duty of the court to say whether a publication is capable of the meaning ascribed to it by the innuendo, but when the court is satisfied of that, it must be left to the jury to say whether the publication has the meaning so ascribed to it."

In *McCall v. Sustair,* civil action for slander, 157 N. C., 178, *Chief Justice Clark,* delivering the opinion, it was held that the words did not amount to an unequivocal charge of larceny, and being capable of different construction, the question was properly left to the jury to determine. And so, in *Reeves v. Bowden,* the defendant, in speaking of the burning of certain houses, said of and concerning plaintiff: "That damned scoundrel knows all about it from beginning to end." It was held the words, being ambiguous, "but permitting of a slanderous interpretation, the jury should determine under all the circumstances what meaning was intended." And to the same effect is *Lucas v. Nichols.*

Applying the principle as approved and illustrated in these and other like cases, we are of the opinion that, considering the language, the manner and circumstances under which it was first spoken to the defendant, and the way it is charged to have been repeated, the words, as alleged in the complaint are capable of the construction that defendant charged and intended to charge the larceny of the chickens and the cause must be referred to the decision of the jury. There is error.

Reversed.