DWIGHT M. CASTELLOE v. NORMAN G. PHELPS.

(Filed 12 March, 1930.)

**1. Libel and Slander A a—In this case held: under facts and circumstances of their utterance, words of defendant were actionable per se.**

A publication claimed to be defamatory should be considered in the sense in which those who heard it would ordinarily understand it, and the circumstances of the utterance and the hearers' knowledge of facts influencing their understanding of the words are pertinent, and where the words spoken by the defendant thus considered permit the inference that he intended and was understood to charge the plaintiff with having uttered a criminal slander and added that the plaintiff should be put on the roads: *Held,* if such be the meaning of the language used the words employed by the defendant are actionable *per se.*

**2. Libel and Slander D e—Where words are ambiguous question of whether defamatory meaning was intended and understood is for jury.**

Where the words used by the defendant are capable of two constructions, one defamatory and the other not, it is for the jury to determine which of the two meanings was intended and understood by those by whom they were heard, taking into consideration the facts and circumstances of the utterance, and in an action thereon defendant's motion as of nonsuit should have been denied.

CASTELLOE *v.* PHELPS.

**3. Libel and Slander B b—In this case held: qualified privilege of defendant did not defeat plaintiff's right to go to the jury.**

In this case *held:* defendant's plea of qualified privilege in that the words claimed to be defamatory were spoken by him as a member of the board of trustees of a public school during a meeting cannot defeat plaintiff's right to go to the jury.

APPEAL by plaintiff from *Small, J.,* at August Term, 1929, of BERTIE. Civil action for slander.

The evidence discloses that plaintiff was principal of Colerain High School, and defendant a member of the board of trustees of said school. In the early morning of 9 December, 1924, about 7 a.m., five of the lady teachers of said school reported to the defendant at his home that the plaintiff had wrongfully accused them the night before of having a man in their room in the teacherage, and that they had come to tender their resignations; whereupon, the defendant called the plaintiff into a conference with the school board and the lady teachers in question. It is alleged that, during said conference, the defendant lost his temper and angrily addressed the plaintiff, loud enough to be heard by all those present and others on the outside, in words in substance as follows: "Mr. Castelloe, you have committed a crime and you ought to be put on the roads."

It is further in evidence that thereafter, and during the morning of the same day, the defendant, while in conversation with the matron of the school, voluntarily repeated in substance language to the same import of and concerning the plaintiff.

About 9:15 p.m. that night the defendant came to the plaintiff at the dormitory and said: "Mr. Castelloe, we have come for your resignation," and pointing to 18 or 20 men, who were standing under a tree about 50 or 60 feet away, added: "Those men have come here after you and you had better get out of Colerain tonight," which he did.

Plaintiff says the words used by the defendant, viewed in the light of the attendant circumstances, by fair intendment, meant to charge that the plaintiff had uttered a criminal slander against the teachers in question, and that they were so understood by those who heard them. Plaintiff testified that no such insinuation was made or intended by him, and that he had only charged the parties in question with a violation of the rules of the school.

From a judgment of nonsuit entered at the close of all the evidence, the plaintiff appeals, assigning errors.

*W. H. S. Burgwyn, E. R. Tyler and A. T. Castelloe for plaintiff.*
*R. Hunt Parker, J. A. Pritchett and J. H. Matthews for defendant.*

STACY, C. J.   Are the words "You have committed a crime and you ought to be put on the roads," addressed to one in the presence of others, and later repeated to another, actionable *per se?*   We think so, when viewed in the light of their imputation and the circumstances under which they were uttered in the instant case.

The words spoken by the defendant, considering the manner and circumstance of their use, as pointed out in *Cotton v. Fisheries Products Co.,* 177 N. C., 56, 97 S. E., 712, permit the inference, and were probably understood by those who heard them to mean, that the defendant intended to impute to the plaintiff, and did charge him with having uttered, a criminal slander, for which, he added, the plaintiff ought to be put on the roads, *i. e.,* subjected to infamous punishment.   If such be the meaning of the language used, and the plaintiff says that it is, then, under the decision in *Jones v. Brinkley,* 174 N. C., 23, 93 S. E., 372, the words employed by the defendant are actionable *per se.   Vincent v. Pace,* 178 N. C., 421, 100 S. E., 581.

The decisions are to the effect that a publication claimed to be defamatory should be considered in the sense in which those to whom it was addressed, or who heard it, would ordinarily understand it.   When thus considered, if its meaning be such as to bear but one interpretation, it is for the court to say whether or not that signification is defamatory.   On the other hand, if it be capable of two meanings, one actionable and the other not, it is for the jury to determine which of the two meanings was intended and so understood by those to whom it was addressed or by whom it was heard.   *Washington Post Co. v. Chaloner,* 250 U. S., 290; *Publishing Co. v. Smith,* 149 Fed., 704.   The circumstances of the publication are to be considered.   *Riddell v. Thayer,* 127 Mass., 487.   And the hearers' knowledge of facts which would influence their understanding of the words used is also pertinent.   *Sydney v. Pub. Corp.,* 242 N. Y., 208.   Indeed, it has been held in this jurisdiction (as stated in 2nd headnote, *Webster v. Sharpe,* 116 N. C., 466, 21 S. E., 912) that words spoken to a person or in his presence, which, taken in connection with the whole conversation, amount to a charge of a crime (storebreaking), to the reasonable apprehension of the persons hearing them, are slanderous and defamatory, although they do not, in terms, charge the crime.   See, also, 17 R. C. L., 266.

Nothing was said in *Deese v. Collins,* 191 N. C., 749, 133 S. E., 92, or *Stokes v. Arey,* 53 N. C., 66, strongly relied upon by appellee, which, when properly interpreted, conflicts with our present position.   Both cases are accordant herewith.

True, the defendant's evidence views the matter in a different light and undertakes to impute a less offensive meaning to the words used, but on a motion to nonsuit, we do not weigh the probable values of conflict-

ing testimony. This is a matter for the jury. *S. v. Howard,* 169 N. C., 312, 84 S. E., 807; *McCall v. Sustair,* 157 N. C., 179, 72 S. E., 974; *Reeves v. Bowden,* 97 N. C., 30; *Lucas v. Nichols,* 52 N. C., 32.

Nor can the defendant's plea of qualified privilege defeat the plaintiff's right to go to the jury. *Newberry v. Willis,* 195 N. C., 302, 142 S. E., 10; *Elmore v. R. R.,* 189 N. C., 658, 127 S. E., 710.

Reversed.