WILLIAM H. OATES v. WACHOVIA BANK AND TRUST COMPANY ET AL.

(Filed 28 June, 1933.)

1. **Libel and Slander D e—Whether words used charged crime within reasonable apprehension of hearers held question for jury.**

The payee took plaintiff's check to defendant bank and requested that it be cashed. The teller went over to the assistant trust officer and assistant secretary of defendant, and then the payee was called over to him, and the officer said in a loud voice "you know O's check is no good; all they have is what they get from the old lady, or beat the old lady out of." *Held*, under the attendant circumstances the words were fairly susceptible of the meaning, within the understanding of those within hearing, of a charge of issuing a worthless check, which is a misdemeanor, or when done with intent to defraud, involves moral turpitude, and the question of the meaning of the words used, within the understanding of those within hearing, considering their knowledge of the facts and the attendant circumstances, is held a question for the jury.

2. **Same—Whether words are actionable per se is for court when they have only one meaning, otherwise their meaning is for the jury.**

Where words spoken are actionable *per se* defamation and damage are conclusively presumed, but if actionable only *per quod*, malice and special damage must be alleged and proven, and where the words are susceptible of only one interpretation the question of whether they are actionable *per se* is for the court, while if they are susceptible of two interpretations, one actionable *per se* and the other not, it is for the jury to determine which of the two meanings was intended and so understood within the reasonable apprehension of the hearers.

CLARKSON, J., not sitting.

APPEAL by plaintiff from *Cowper, Special Judge,* at August Special Term, 1932, of HENDERSON.

Civil action for slander.

The record discloses that on 2 April, 1931, the plaintiff, a licensed attorney, who lives in Hendersonville, gave to O. V. Powers, chief of police of that city, a check for $200 drawn upon the Commercial National Bank of Charlotte, N. C., made payable to the order of "cash," and requested, at the time, that the check be not cleared through a Hendersonville bank.

A short time thereafter, the chief of police was in Asheville and knowing that the Wachovia Bank and Trust Company had, in the past, looked after the plaintiff's business in Hendersonville, presented said check to the teller and asked that it be cashed. At first, the teller started to cash the check, but, before doing so, went back to the desk where C. N. Walker, assistant trust officer and assistant secretary of the corporate defendant, was sitting, and after conversing with him, called the chief of police over to Walker's desk.

Walker said to Powers in a rough tone of voice and loud enough to be heard by employees and customers of the bank present in the lobby, "You know William Oates' check is no good." Powers replied that the check had been given to him at the instance of Mrs. Oates, and for reasons satisfactory to himself, he knew it was good. Walker replied: "Well, all they have is what they get from the old lady," or "beat the old lady out of." Powers, continuing, testified: "It seemed that he was mad at Mr. Oates; did not have any use for him and said it as hateful as he could. He spoke as if he knew the check was no good. His manner was not at all pleasant."

Powers took the check from Walker's hand with the statement, "I will get it cashed somewhere else." He stopped at Fletcher on his way home and had the check cashed by the bank there. It was duly paid by the drawee bank upon presentation and was good at the time of its execution and delivery.

It was further in evidence that plaintiff's mother had executed a living trust with the corporate defendant, and had sought, on one or two occasions, to modify it for the benefit of the plaintiff, but the corporate defendant had declined to consent to such modification, and the said C. N. Walker was familiar with said trust agreement and acquainted with the affairs of said trust estate.

It is alleged that the animus of the defendants arises from a desire to deprive the plaintiff of certain rights under this trust agreement.

Plaintiff appeals from a judgment of nonsuit entered at the close of his evidence.

*R. L. Whitmire for plaintiff.*
*M. M. Redden, Shipman & Arledge and Bourne, Parker, Arledge &*
*DuBose for defendants.*

STACY, C. J. Are the words "You know William Oates' check is no good; all they have is what they get from the old lady, or beat the old lady out of," viewed in the light of the circumstances under which they were spoken, fairly susceptible of the meaning, within the understanding of those to whom they were addressed or published, that the speaker meant to charge, and, by fair intendment, did charge, the maker with having uttered a worthless check? We think so. *Castelloe v. Phelps,* 198 N. C., 454, 152 S. E., 163.

It is a misdemeanor for any person knowingly to utter a worthless check in this State. Chap. 62, Public Laws, 1927; *S. v. Yarboro,* 194 N. C., 498, 140 S. E., 216. And such act involves moral turpitude if done with intent to defraud. C. S., 4283 and 4173; *S. v. Yarboro, supra; Jones v. Brinkley,* 174 N. C., 23, 93 S. E., 372; *Gudger v. Penland,* 108 N. C., 593, 13 S. E., 168; *Barnett v. Phelps,* 97 Ore., 242, 191 Pac., 502, 11 A. L. R., 663; 17 R. C. L., 265, *et seq.*

Even so, the defendants contend that the charge of uttering a worthless check is actionable *per quod* and not *per se. Deese v. Collins,* 191 N. C., 749, 133 S. E., 92; *Payne v. Thomas,* 176 N. C., 401, 97 S. E., 212; *Gudger v. Penland, supra; McKee v. Wilson,* 87 N. C., 300; *Pegram v. Stoltz,* 76 N. C., 349; *Hurley v. Lovett,* 199 N. C., 793, 155 S. E., 875; *Pollard v. Lyon,* 91 U. S., 225; Note, 12 Am. Dec., 39, *et seq.;* 17 R. C. L., 264. The difference between the two is, that if actionable *per se,* malice and damage are conclusively presumed, but if actionable only *per quod,* both malice and special damages must be alleged and proved. *Walker v. Tucker,* 220 Ky., 362, 295 S. W., 138, 53 A. L. R., 547.

However this may be, the plaintiff says there is evidence of falsity, malice and special damages on the present record sufficient to overcome the demurrer. *Deese v. Collins, supra; Newberry v. Willis,* 195 N. C., 302, 142 S. E., 10; *Pentuff v. Park,* 194 N. C., 146, 138 S. E., 616, 53 A. L. R., 626; *Elmore v. R. R.,* 189 N. C., 658, 127 S. E., 710; *Pollard v. Lyon, supra.* The defendants contend otherwise.

The decisions are to the effect that a publication claimed to be defamatory should be considered in the sense in which those to whom it was addressed, or who heard it, would ordinarily understand it. When thus considered, if its meaning be such as to bear but one interpretation, it is for the court to say whether that signification is defamatory. On the other hand, if it be capable of two meanings, one actionable and the other not, it is for the jury to determine which of the two was in-

tended and so understood by those to whom it was addressed or by whom it was heard. *Washington Post Co. v. Chaloner,* 250 U. S., 290; *Publishing Co. v. Smith,* 149 Fed., 704. The circumstances of the publication are to be considered. *Riddell v. Thayer,* 127 Mass., 487. And the hearers' knowledge of facts which would influence their understanding of the words used is also pertinent. *Sydney v. Pub. Corp.,* 242 N. Y., 208. Indeed, it has been held in this jurisdiction (as stated in 2nd headnote, *Webster v. Sharpe,* 116 N. C., 466, 21 S. E., 912) that words spoken to a person or in his presence, which, taken in connection with the whole conversation, amount to a charge of a crime (storebreaking), to the reasonable apprehension of the persons hearing them, are slanderous and defamatory, although they do not, in terms, charge the crime. See, also, 17 R. C. L., 266. The case is one for the jury. 17 R. C. L., 307.

Reversed.

CLARKSON, J., not sitting.