## J. A. & R. A. REID *vs.* PROVIDENCE JOURNAL CO.

PROVIDENCE—JUNE 8, 1897.

PRESENT: Matteson, C. J., Stiness and Tillinghast, JJ.

In libel cases language is not to be forced or tortured in order to make it actionable—it is to be taken in its plain and ordinary sense.

Although greater liberality is exercised in case of spoken words than when they are contained in written or printed articles, yet in both cases they must be presumed to be used in their ordinary import in the community in which they are uttered or published.

If the language is not reasonably capable of conveying to the ordinary mind the defamatory meaning alleged in the innuendo, it is the duty of the court to so decide, and to deny the right to maintain an action thereon.

All words *in their nature defamatory*, are actionable if special damages follow; but this is not true of words that are *not* defamatory in their nature.

Any false and malicious words imputing conduct which injuriously affect one's reputation, or which tends to degrade him in society, or to bring him into public hatred or contempt, are in their nature defamatory.

Such words are either actionable *per se*, or may be made actionable by proper innnendoes, or by alleging and proving special damages.

An action of the case may be maintained for the use of any words, not defamatory in their nature, which cause special damage, if false and malicious, and used by one who knew or ought to have known that such damage would follow; but such words cannot be made the basis of an action for libel or slander.

One may not both demur and plead to the same count at the same time, as the filing of the pleas without first obtaining a decision upon his demurrer is a practical abandonment of the demurrer; but, as the practice almost universally is to allow a defendant to plead over after an adverse decision on his demurrer, so technical an objection should not prevail.

Where a declaration states no cause of action an error in the defendant's pleading cannot avail the plaintiff anything, since a motion in arrest of judgment (after verdict or decision against the defendant) would accomplish the same end as a demurrer well pleaded.

TRESPASS ON THE CASE for libel published in defendant's newspaper. Certified from the Common Pleas Division and heard on substantial demurrer to the declaration.

TILLINGHAST, J.   This is an action of trespass on the case for libel, and is based upon the publication by the defendant of the following item or article, viz :

"Thrice burned.   The Daniels & Cornell block again visited by fire.   Damage largely by water, and estimated at $70,000, covered by insurance.

At 10.15 o'clock last night, R. A. Reid, of the printer's firm of J. A. & R. A. Reid, while working at his desk on the top floor of the tall Daniels & Cornell building on Custom House street, discovered smoke and flame issuing from the composing room in the rear of the office and which was raging near the boiler.   He immediately descended to the street and notified patrolman Hartwell, who sounded an alarm from box 146, on the pole located at Turk's Head. The fiery element completely invaded the entire fifth floor, which was all occupied by the Messrs. Reid, who claim complete loss from fire and water.   They were insured for $55,-000.   The fire extended from this room to the roof, the northwest portion of which was destroyed.   The fire is the third to have occurred in this building in the past thirteen years. It was completely destroyed in the great fire of September, 1877, and all but ruined on Sunday evening, February 19, 1888.   Every fire in this building has started on the upper floor and twice in Reid's printing establishment."

By way of explanation of this publication the plaintiff adds the following innuendo :

"Meaning and intending to convey the impression and belief that said plaintiffs intended to injure and defraud their insurers of $55,000 claimed by them in consequence of the fire aforesaid, and also meaning to cause it to be suspected and believed that the said plaintiffs knew of the origin of said fire of May 22, 1890, and were criminally responsible for it ; and also to cause it to be suspected and believed that the other fires above mentioned were of incendiary origin, and that the fire of May 22, 1890, was also incendiary, and that said fires were set or procured to be set by the said plaintiffs."

The defendant demurs to the declaration on the grounds : (1) That the article, unexplained by the innuendo, is not

libelous ; and (2) That the innuendo attributes to the article·
a meaning which it is incapable of bearing.

We think the demurrer should be sustained.   The article·
in question contains no defamatory language, nor do we
think it is capable of the meaning attributed to it in the in-
nuendo.   It is simply a statement of an occurrence which
was a proper subject of public notice and comment, and does·
not in any way reflect upon the character of the plaintiffs.
It not only fails to charge or even insinuate that the fire was·
of incendiary origin, but, on the contrary, by alleging that·
one of the plaintiffs, while working at his desk, first discov-
ered smoke and flame issuing from the composing room in
the rear of the office, and that the fire was raging near the·
boiler, and also that he immediately caused an alarm to be
sounded, the natural inference to be drawn therefrom is that·
the fire was accidental and originated in the boiler room.
The only portion of the article which by any possibility could
be tortured into a charge that the defendants were in some·
way criminally responsible for the fire referred to, is the·
last sentence thereof.   But language is not to be forced or
tortured in libel cases in order to make it actionable.   It is·
to be taken in its plain and ordinary sense.   And although
greater liberality is exercised in the case of words when they
are spoken than when they · are contained in written or
printed articles—Cooley on Torts 2 ed. 239,—yet in both
cases the person must be presumed to have used them in their·
ordinary import in the community in which they are uttered
or published.   *Edsall* v. *Brooks*, 3 Robertson, N. Y. 295.
In *Roberts* v. *Camden*, 9 East. 93, the court say :   "Words·
are now construed by courts as they always ought to have
been, in the plain and popular sense in which the rest of the
world naturally understand them."   See Townshend Lib. &
Sl. 3 ed. 176 and cases cited ; *Demarest* v. *Haring*, 6 Cow.
76–87 ; *Fitzgerald* v. *Robinson*, 112 Mass. 371.   The fact·
that supersensitive persons, with morbid imaginations, may
be able by reading between the lines of an article to discover·
some defamatory meaning therein is not sufficient to make it
libelous.   In other words, if the language is not reasonably·

capable of conveying to the ordinary mind the defamatory
meaning alleged in the innuendo, it is the province and duty
of the court to so declare, and to deny the right to maintain
an action thereon.    *Carter* v. *Andrews*, 16 Pick. 1.

But the plaintiff's counsel contends that even though the
language complained of is not actionable *per se*, and is not
made so by the innuendoes, yet it becomes actionable by
reason of the allegation of special damage.    We do not
agree to so broad a statement of the law as pertaining to
libel and slander.    For while it is undoubtedly true that all
words, *in their nature defamatory*, are actionable if a special
damage follows, yet this is not true with regard to words
which are not in their nature defamatory.    In *Fanning* v.
*Chace*, 17 R. I. 388, it was contended by the plaintiff that
language charging him with the intention of starting a house
of ill-fame, by reason of which he sustained special damage,
was actionable.    But this court held that, as the words relied
on were not *defamatory*, they were not actionable.    In *Ter-
williger* v. *Wands*, 17 N. Y. 57, Strong, J., states the law as
follows : " It would be highly impolitic to hold all language,
wounding the feelings and affecting unfavorably the health
and ability to labor, of another, a ground of action ; for that
would be to make the right of action depend often upon
whether the sensibilities of a person spoken of are easily ex-
cited or otherwise ; his strength of mind to disregard abusive,
insulting remarks concerning him ; and his physical strength
and ability to bear them.    Words which would make hardly
an impression on most persons, and would be thought by
them, and should be by all, undeserving of notice, might be
exceedingly painful to some, occasioning sickness and an
interruption of ability to attend to their ordinary avocations.
There must be some limit to liability for words not actionable
*per se*, both as to the words and the kind of damages ; and
a clear and wise one has been fixed by the law.    The words
must be *defamatory in their nature ;* and must in fact dis-
parage the character ; and this disparagement must be evi-
denced by some positive loss arising therefrom directly and
legitimately as a fair and natural result."    In this view of

the law words which do not degrade the character do not injure it, and cannot occasion loss. In Cook's Law of Defamation, (p. 24), it is said, "in order to render the consequence of words spoken special damage, the words must be in themselves disparaging ; for if they be innocent the consequence does not follow naturally from the cause." In *Kelley* v. *Partington*, 5 B. & A. 650, which was an action of slander wherein special damage was alleged, Littledale, J., said : "I cannot agree that words laudatory of a party's conduct would be the subject of an action if they were followed by special damage. They must be defamatory or injurious in their nature. In Comyns's Dig., vol. 1, tit. *Action on the Case for Defamation* (D) 30, it is said *generally*, that any words are actionable by which the party has a special damage, but all the examples given in illustration of that rule are of words defamatory in themselves, but not actionable, because they do not subject the party to a temporal punishment. In all the instances put, the words are injurious to the reputation of the person of whom they are spoken." Taunton and Patterson, J. J., were of the same opinion. This decision was subsequently approved and adopted in *Sheahan* v. *Ahearne*, 9 Ir. Rep. C. L. 412. The conflict of authority which has arisen as to whether the words must be in their nature defamatory, in order to be actionable when a special damage is alleged, is more seeming than real, and has mainly arisen from a difference of understanding as to what constitutes defamatory words. And a careful examination of the cases which hold in general terms that any words by which a person suffers a special damage are actionable, will show that the words were in fact defamatory. See *Moore* v. *Meagher*, 1 Taunt. 39. "No general rule can be laid down," as said by Mr. Odgers, in his valuable work on Libel and Slander, "stating absolutely and beforehand what words are defamatory and what are not." "Words which would seriously injure A's reputation might do B's no harm." "Each case must be decided on its own facts."

We think it may be safely said that any words, if false and malicious, imputing conduct which injuriously affects a

man's reputation, or which tends to degrade him in society or bring him into public hatred and contempt, are in their nature *defamatory*, and either actionable *per se*, or may be made actionable by proper innuendoes or by alleging and proving special damage. And that words which are not in their nature defamatory, while perhaps, if false and malicious and if used by a person who knows, or ought to know, that special damage will follow, and such damage does in fact follow, an action of the case may be maintained whatever the nature of the words—Odgers, *supra*, 88-91 ; *Young* v. *McRae*, 3 Best & S. 264 ; *Lynch* v. *Knight*, 9 H. L. c. 589 ;—yet cannot be made the basis of an action for libel or slander.

Plaintiff's counsel takes the point that defendant ought not to be allowed to demur and plead at the same time ; and that, having done so in this case, the demurrer has no standing. It is doubtless true that a defendant cannot both demur and plead to the same count at the same time, as the filing of the plea without first obtaining a decision upon his demurrer is a practical abandonment of the demurrer. *Moore* v. *Glover*, 116 Ind. 367 ; *Miller* v. *Maxwell*, 16 Wend. 23. But as the practice almost universally is to allow a defendant to plead over after an adverse decision is rendered on his demurrer— *Hancock* v. *Vawter*, Hardin, Ky. 510 ; *Miller* v. *Heath*, 7 Cow. 101 ;—we do not think that so technical an objection should avail. And, moreover, as the practice in this State has long been for the defendant at the time of filing his demurrer to add the following, viz. : "Saving which and if overruled the defendant, by leave of court first had and obtained, comes and defends, &c.," and then follows with his pleas to the merits, we are inclined to hold the defendant to the strict rules of common-law pleading. See *Bruce* v. *Mathers*, 2 Bibb. 294 ; *State* v. *Edgerton*, 12 R. I. 108. And, moreover, as the declaration states no cause of action, it could not avail the plaintiffs anything for us to hold that, by reason of its error in pleading, the defendant has no standing on the demurrer, as a motion in arrest of judgment, in case a judgment should ever be reached, would accomplish the same purpose.

Demurrer sustained, and case remitted to the Common Pleas Division with direction to enter judgment for the defendant.