## COMMERCIAL PUB. CO. v. SMITH.

(Circuit Court of Appeals, Sixth Circuit. January 8, 1907.)

No. 1,557.

**1. LIBEL—ACTION—DEFENSES.**

The publication of a statement that a person has been arrested on a criminal charge is not actionable if the statement is true, but if there is added to it by way of comment words which amount to an accusation that the charge is true, or comment which assumes the guilt of the person arrested, by headlines or otherwise, the mere fact that the person was arrested on the charge stated is no justification for the words imputing guilt.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 32, Libel and Slander, § 148.]

**2. SAME—CONSTRUCTION OF PUBLICATION—QUESTION FOR JURY.**

A publication must be read and construed in the sense in which the readers to whom it is addressed would ordinarily understand it, and the whole, including display lines, should be read and construed together, and its meaning and signification thus determined. When so read, if it is so unambiguous as to reasonably bear but one interpretation, it is for the judge to say whether it is defamatory or not; but if it is capable of two meanings, one of which would render it libelous and actionable and the other not, it is for the jury to say, under all the circumstances surrounding its publication, including extraneous facts admissible in evidence, which of the two meanings would be attributed to it by those by whom it might be read.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 32, Libel and Slander, §§ 357–359.]

**3. SAME.**

An item published by defendant in its newspaper, under the heading "Murderer Arrested," stated that a sheriff had arrested the plaintiff, who was wanted in another state for the murder of a man, the incentive being robbery; that rewards had been there offered for plaintiff's arrest; that he did not deny being the man wanted, but claimed that he did not do the killing. In an action for libel because of such publication, the declaration admitted that plaintiff was arrested as therein stated, and alleged by innuendo that the article charged plaintiff with murder, and that rewards had been offered for his arrest, which statements were false and untrue; that plaintiff had been injured thereby, etc. Held, that the question whether the article would be understood by renders to so charge, and was therefore libelous. was one for the jury, and that the court erred in charging that it was libelous per se.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 32, Libel and Slander, §§ 357, 358.]

In Error to the Circuit Court of the United States for the Western District of Tennessee.

E. E. Wright, for plaintiff in error.

H. D. Minor, for defendant in error.

Before LURTON, SEVERENS, and RICHARDS, Circuit Judges.

LURTON, Circuit Judge. Action for libel. Jury, and verdict and judgment for plaintiff. Defendant has sued out this writ or error. The alleged libelous publication consisted in the publication in the newspaper published by the plaintiff in error of a special dispatch from its

own special correspondent at Augusta, Ark., in words and figures as follows:

#### "Murderer Arrested.

"Augusta, Ark., Feb. 10th.—Sheriff Marshal Patterson arrested Fred Smith, camped in a tent ten miles north of Augusta, on White river. Smith is wanted at Kennett, Mo., for killing old man F. E. Porch, the incentive being robbery. The state of Missouri offered $300, the county $200, and the citizens of Malden $600, for Smith's arrest. Smith does not deny being the man wanted, but claims he did not do the killing."

The declaration, by innuendo, averred that the meaning of the said publication was:

"That the said plaintiff was a murderer; that he had murdered an old man named F. E. Porch for the purpose of robbing him; that a reward was being offered for the arrest of said plaintiff; and that he, the said plaintiff, on being arrested, did not deny that he was the man wanted."

The declaration admitted that so much of the item as stated that the plaintiff had been arrested by Sheriff Patterson at the time and place stated was true, but that the statement that "a murderer had been arrested, and that the said plaintiff was 'wanted at Kennett, Mo., for killing old man Porch, the incentive being robbery' and that 'the state of Missouri had offered $300, the county $200, and the citizens of Malden $600,' for the arrest of plaintiff, and that the plaintiff did not deny being the man wanted," were false and untrue, and that by this false publication plaintiff had been greatly injured, etc.

The defendant interposed three pleas: First. Not guilty. Second. That the publication did not refer to the plaintiff but to one Fred Smith, a different individual. The third plea was in these words:

"For further plea, filed by leave of the court, the defendant says that the plaintiff was arrested by Sheriff Marshal Patterson in a tent near Augusta, Arkansas, on a charge of murder, and under the belief by the sheriff that he was guilty of that offense, and that the plaintiff did claim that he did not do the killing for which he was arrested. The substance of the publication complained of is that the plaintiff was arrested on the charge of murder, and that he claimed that he was innocent of that charge. The sheriff may have made a mistake in the matter. The defendant says the article complained of did not state that the plaintiff is guilty of murder, nor does the language used bear that meaning. It only says and means, in substance, that the plaintiff was arrested on the charge of murder. Wherefore pleads this special justification as to the truth of the words herein referred to in bar and defense of this action."

The case turned below upon the sufficiency of this third defense, and must turn here upon the question as to whether the meaning of the item was for the jury. In respect of the construction and interpretation of the item, the court said:

"I charge you, gentlemen of the jury, that the publication set out in the declaration is libelous per se—that is, it is actionable on its face—and if you believe from a preponderance of the evidence in the case that the defendant published the article, and if you further believe that it was published of and concerning the plaintiff, and that it was untrue, then the plaintiff would be entitled to a verdict at your hands."

He denied a request to charge that it was the province of the jury to determine the meaning of the objectionable item, and that if they should find that the article or item only conveyed to those who read it

149 F.—45

"the meaning that the plaintiff was arrested by the sheriff on the charge of murder" etc., that the plaintiff could not recover if they should find as a fact that the plaintiff had been arrested by the sheriff upon a charge of murder, although the sheriff might have made a mistake in so doing. The publication of the fact that one has been arrested, and upon what accusation, is not actionable, if true. But a newspaper has no greater justification for the publication of defamatory matter than pertains to any private person. The defense against an action for writing or saying of one that he has been arrested upon a particular charge is that the fact is true. But if to this fact there is added, by way of comment, words which amount to an accusation that the charge is true, or comment which assumes the guilt of the person arrested, by headlines or otherwise, the mere fact that the person was arrested upon the charge stated is no justification for words imputing guilt. Newell on Slander & Libel, p. 574; Usher v. Severance, 20 Me. 9, 11, 37 Am. Dec. 33; McBee v. Fulton, 47 Md. 403, 28 Am. Rep. 465.

The plaintiff's case depended upon whether the publication in question went beyond a mere statement of the fact of his arrest upon the charge of murder. By innuendo he placed an interpretation upon the words printed, which, if established, signified that the plaintiff was guilty of the murder of Porch, and was the person for whom the rewards had been offered as a fugitive from justice.

The defendant's third plea was, in effect, an admission of the publication, but a denial that the words printed of him, when read together, meant more than that he had been arrested under a charge of being the man who had murdered Porch, and for whom rewards were offered. If this is the meaning which is fairly attributable to the article by those to whom it was addressed, the plaintiff's case must fail. In such case the article would be justified by the truth of the only facts stated or implied, to wit, that the plaintiff had been arrested upon the charge of having murdered Porch with intent to rob him. The issue presented by the defendant's third plea and the request for a special charge, referred to above, was as to the meaning of the article published concerning the plaintiff. The court, in effect, instructed the jury to find for the plaintiff by saying to them that the publication was "actionable on its face," and that if it was published of and concerning the plaintiff and untrue, then the plaintiff would be entitled to a verdict. This was not excepted to. But the special request proffered at the conclusion of the charge was in direct opposition. By it the court was asked to submit to the jury the meaning of the article, with an instruction that, if they found that the item "only charged or conveyed to those who read it the meaning that the plaintiff was arrested by the sheriff on the charge of murder, and that the plaintiff claimed that he was not guilty thereof, that these words, under such a meaning, would not be libelous and actionable, if you find that the plaintiff was in fact arrested by the sheriff for murder, although the sheriff made a mistake by so doing." This charge was denied. This was error. A publication claimed to be defamatory must be read and construed in the sense in which the readers to whom it is addressed would ordinarily understand it. So the whole item, including display lines, should be read and construed together, and its meaning and signification thus de-

termined. When thus read, if its meaning is so unambiguous as to reasonably bear but one interpretation, it is for the judge to say whether that signification is defamatory or not. If, upon the other hand, it is capable of two meanings, one of which would be libelous and actionable and the other not, it is for the jury to say, under all the circumstances surrounding its publication, including extraneous facts admissible in evidence, which of the two meanings would be attributed to it by those to whom it is addressed or by whom it may be read. Newell on Slander & Libel, § 290; Townshend on Libel & Slander, §§ 281, 286; 13 Enc. Pleading & Practice, 106; Sturt v. Blogg, 10 Q. B. 908; Capital & Counties Bank v. Henty & Sons, 7 App. Cases 741, 744; Watson v. Nicholas, 6 Humph. (Tenn.) 174; Bank v. Bowdre Bros., 92 Tenn. 723, 740, 23 S. W. 131; Dexter v. Taber, 12 Johns. (N. Y.) 239; Mosier v. Stoll, 119 Ind. 244, 20 N. E. 752; and Twombly v. Monroe, 136 Mass. 464, 468.

The plaintiff by innuendo assigned a meaning to the news item alleged to be libelous, which, if established, would attach a meaning and signification imputing to the plaintiff an indictable crime of heinous character. In Cunningham v. Underwood, 116 Fed. 803, 807, 53 C. C. A. 99, we said that:

"When antecedent words are capable, as a matter of law, of being understood in more than one sense, it is the office of an innuendo to designate that meaning which the plaintiff proposes to establish as the meaning intended by the defendant and understood by those who heard or read them."

But the court relieved the jury of all discretion in the matter of the signification of the printed words by the instruction set out and by the refusal to give the instruction asked. In Sturt v. Blogg, cited above, and quoted with approval by Lord Selbourne in Capital & Counties Bank v. Henty, cited above, it was said by Wilde, C. J.:

"It is the duty of the judge to say whether a publication is capable of the meaning ascribed to it by an innuendo; but where the judge is satisfied of that, it should be left to the jury to say whether the publication has the meaning ascribed to it."

The publication here involved was not so free from reasonable doubt as to its meaning and signification as to justify the learned circuit judge in ascribing to it, as matter of law, the signification sought to be put upon it by the innuendo. There was room for the jury, taking into consideration the display line and all other parts of the dispatch, and all the circumstances in evidence, to conclude that it would only convey to the readers of the paper the information that the plaintiff had been arrested under the charge of being the person accused with the murder of Porch, and for whom a reward was offered, and that plaintiff had admitted that he was the person wanted by the sheriff who made the arrest, but that he denied that he was the murderer of Porch.

The case is to be retried. This fact makes it proper that we should express no opinion as to whether this meaning is the most natural interpretation, or one which imputes to the plaintiff the crime of murder.

Judgment of the court below reversed, with direction to order a new trial.