George J. LAMBERT,
Plaintiff-Appellant,

v.

PROVIDENCE JOURNAL COMPANY,
Defendant-Appellee.

No. 74–1287.

United States Court of Appeals,
First Circuit.

Argued Nov. 4, 1974.

Decided Jan. 7, 1975.

Roderick A. J. Cavanagh, Wakefield, R. I., for appellant.

Knight Edwards, Providence, R. I., with whom Edward F. Hindle, Terrence M. Finn, and Edwards & Angell, Providence, R. I., were on brief, for appellee.

Before COFFIN, Chief Judge, McENTEE and CAMPBELL, Circuit Judges.

McENTEE, Circuit Judge.

Plaintiff George J. Lambert owned and operated the Camelot Inn, a cafe in Fall River, Massachusetts. On October 6, 1972, at the Inn he shot and killed one Thomas F. McCabe. As a result of this incident, described more fully in the newspaper accounts in notes 1–4 *infra*, Lambert was charged as an accessory after the fact to murder, and later with murder itself. The charge was reduced to manslaughter, however, at a bindover hearing. Lambert was tried in the Massachusetts Superior Court for Bristol County and was acquitted.

During the period before trial the defendant, the Providence Journal Company, published four articles concerning

Lambert dated October 8,[1], October 13,[2], and December 28, 1972[3] and February 18, 1973,[4] which it distributed in Massachusetts and Rhode Island. Alleging the

1. "Pair Deny Murder, Accessory Charges—2 Men held in Fatal Fall River Shooting

   "Two Fall River men were arrested by police early yesterday morning and charged in connection with the murder shortly before midnight Friday of a 28-year-old Fall River man in the Camelot Inn on South Main Street.

   "Edward Smialek, 55, who lives above the Inn at 427 South Main St., pleaded innocent to a charge of murder before Judge Hugh Morton in District Court yesterday afternoon.

   "The manager of the Camelot Inn, George J. Lambert, 28, of 746 King Philip St., pleaded innocent to a charge of being an accessory after the fact of murder. Both cases were continued to Wednesday.

   "The charges stem from the shooting death of Thomas F. McCabe, Jr., 28, of 288 Lincoln Avenue, Fall River, who was vice president and one of the owners of the Cellar Door Cafe on Davol Street. His murder was the ninth in Fall River this year.

   "Detectives from the Criminal Investigation Division said Smialek and Lambert were arrested about 5 a. m. yesterday inside the Camelot Inn. The two had remained there after the shooting while police conducted their investigation.

   "Smialek is being held at Bristol County House of Correction without bail and Lambert who is represented by his brother, Jay Lambert, an attorney, was released on $10,000 bail.

   "Police confirmed that the murder occurred shortly before midnight Friday when Mr. McCabe and three friends entered the Camelot Inn and were told to leave by the management because they were not wearing jackets or ties. . . ."

2. "Court Action Taken Against 4 In Three Fall River Murders

   "Court developments in three of the city's homicide cases were recorded yesterday in Fall River.

   * * * * * *

   "In district court, George J. Lambert, 28, of 746 King Phillip St., proprietor of the Camelot Inn on South Main Street, Fall River, was arraigned on a charge of murder in connection with the fatal shooting of Thomas F. McCabe, Jr., 28, of 288 Lincoln Avenue, Oct. 6, at the inn.

   "Also charged with homicide resulting from the same shooting is Edward J. Smialek 55, of 427 S. Main St.

   "He was arraigned last Tuesday on a charge of being an accessory after the fact to the same murder, a count that remains against him.

   "Yesterday after Lambert pleaded innocent to murder, Judge Milton R. Silva ordered him committed to the New Bedford House of Correction on $25,000 bail. Surety in that amount was posted for him yesterday afternoon and he was released. . . ."

3. "Fall River Cafes Beginning to See the Light"

   ". . . The board's swift and decisive action has set it at loggerheads in at least one instance with the state Alcoholic Beverage Commission.

   "The ABC recently overruled the indefinite suspension of a liquor license at Camelot Inn, 425 S. Main St., contending that the board exceeded its authority. The ABC returned the license pending a court hearing on an October murder charge brought against the cafe owner, George Lambert.

   "The incident is illustrative of what the licensing board has been up against. The murder victim, Thomas F.McCabe was the owner of Cellar Door Cafe, 1082 Davol St., which lost its license in September for 'general mismanagement,' including alleged drug trafficking, having minors on the premises and violating fire codes. . . ."

4. "Homicide—13 Murder Cases Scheduled For Trial Next Month in Bristol Cty."

   "Thirteen Bristol County murder cases have been scheduled for trial next month during the special three week Superior Court session requested by District Attorney Philip Rollins.

   * * * * *

   "The 28-year-old vice president and part owner of the Cellar Door, a bar on Davol Street, is the fourth Fall River murder victim whose case will go to Superior Court.

   "Thomas F. McCabe, Jr., 28, of 288 Lincoln Ave., was shot to death inside the Camelot Inn on South Main Street shortly before midnight on Oct. 6.

   "Arrested first as an accessory and later for the actual murder is the Camelot Inn's then manager, George J. Lambert, 28, of 746 King Philip St.

   "Police reports indicated Mr. MCabe and three friends entered the Inn and immediately were told to leave because of a rule demanding ties and jackets. A fight ensued and Mr. McCabe was shot, staggered to the outside door and collapsed. . . ."

articles were defamatory,[5] Lambert sued the Journal in the District Court for the District of Rhode Island. The Journal filed a motion for summary judgment together with supporting affidavits, Lambert's deposition, and a memorandum of law. Lambert filed an objection to the motion, together with supporting affidavits, depositions, and a memorandum of law. The court granted the motion on the alternative grounds that the allegedly libellous material was not defamatory since the innuendo pleaded by Lambert was unwarranted, and that even if the material were actionable Lambert failed to demonstrate that there was a genuine issue of fact as to the Journal's actual malice under the standard established in New York Times Co. v. Sullivan, 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 685 (1964). Lambert appeals. We find it unnecessary to reach the court's second ground of decision, as we agree that none of the articles was reasonably capable of any defamatory meaning.

■ Lambert cannot object to the articles insofar as they report, admittedly truthfully, that he was *charged* with murder. "The publication of the fact that one has been arrested, and upon what accusation, is not actionable, if true. . . . But if to this fact there is added, by way of comment, words which amount to an accusation that the charge is true, or comment which assumes the guilt of the person arrested, by headlines or otherwise, the mere fact that the person was arrested upon the charge stated is no justification for

words imputing guilt." Commercial Pub. Co. v. Smith, 149 F. 704, 706 (6th Cir. 1907); Thompson v. Globe Newspaper Co., 279 Mass. 176, 188, 181 N.E. 249 (1932). Lambert claims that the articles' characterization of McCabe as a murder victim and the incident itself as a murder with that term's denotation of illegality, instead of the neutral "shooting death," "homicide," or "killing," constituted such editorial comment imputing guilt. In support of his construction Lambert submitted the depositions of three community residents who testified that such had been their "fair," "plain," and "ordinary" understanding of the articles in question.

■ It is for the court to decide whether a statement can be defamatory in character. Andoscia v. Coady, 99 R.I. 731, 735, 210 A.2d 581, 584 (1965); Sharratt v. Housing Innovations, Inc., 1974 Mass.Adv.Sh. 575, 577–578, 310 N.E.2d 343, 345.[6] Reading the articles in their entirety, Bray v. Providence Journal Co., 101 R.I. 111, 116, 220 A.2d 531, 534, W. Prosser, Torts § 111 at 747–48 (4th ed. 1971), and construing their language naturally, Reid v. Providence Journal Co., 20 R.I. 120, 122, 37 A. 637 (1897); Lyman v. New England Pub. Co., 286 Mass. 258, 261, 190 N.E. 542, 543 (1934), we are constrained to agree with the district court that none was reasonably capable of conveying the defamatory meaning Lambert alleges. Bray v. Providence Journal Co., *supra*; Sharratt v. Housing Innovations, Inc., *supra* at 578, 310 N.E.2d at 345. Even if the use of the term "murder" implied that the killing was unlawful, each article unequivocally

---

5. The innuendo actually pleaded, that each article was understood to mean that "a 'murder' had been committed and that Plaintiff was charged with the criminal conduct aforesaid," seems deficient as a matter of law. The latter imputation would be defamatory but was admittedly true; the former is false but not defamatory as to Lambert because it does not imply his involvement. Riverhouse Pub. Co. v. Porter, 287 F.Supp. 1, 3–5 (D.R.I. 1968); Hanson v. Globe Newspaper Co., 159 Mass. 293, 294–295, 34 N.E. 462, 462–463 (1893). The essence of Lambert's claim is that the articles were understood to mean

that he had committed murder, and we treat it as such throughout our opinion.

6. The district court applied Rhode Island's law of libel in this case. Erie R. R. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). Since Massachusetts law does not differ in any significant respect as our twin citations throughout will show, we need not consider whether that state has a more significant relationship to the occurrence and the parties. *See* Restatement (Second) of Conflict of Laws § 150 (1971).

states that Lambert has "denied" the murder charge or "pleaded innocent," or reports the progress of the case in such a way as to make clear that no determination of his involvement has been made. Nothing in them suggests that the Journal has concluded that Lambert is the guilty party even if it has decided that there was a murder.[7] Moreover, the term "murder" is used interchangeably throughout with the terms "fatal shooting," "shooting death," and "homicide," often in the same or adjacent sentences. In this context the term clearly is chosen solely for variety's sake and merely echoes the report of the charges levelled against Lambert without implying their truthfulness. It is obviously to be understood as "alleged murder." In these routine news articles we think it would require more forceful language than this to justify Lambert's reading.[8] The innuendo cannot be used to enlarge the natural meaning of the words actually used. Ogrodnick v. Providence Journal Co., 93 R.I. 316, 317, 175 A.2d 289, 291 (1961); Colby Haberdashers, Inc. v. Broadstreet Co., 267 Mass. 166, 170, 166 N.E. 550, 551 (1929). None of these articles can be construed to impute guilt without such an enlargement.

Finding the meaning of the articles clear, we see no basis on which the depositions of witnesses could be held competent as to their defamatory capacities. Snell v. Snow, 54 Mass. (13 Metc.) 278 (1847); Duncan v. Pearson, 135 F.2d 146 (4th Cir. 1943). To the ordinary reasons advanced for excluding such testimony may be added the difficulty, evidenced by the depositions here, of distinguishing between "murder" and "killing"—a distinction vital to Lambert's case. Such considerations explain the courts' reluctance to entertain libel suits dependent upon a precise construction of a newspaper's use of technical legal terminology. Bray v. Providence Journal Co., *supra* ("testimony"). Joyce v. Globe Newspaper Co., 355 Mass. 492, 245 N.E.2d 822 (1969) ("commitment"); Piracci v. Hearst Corp., 263 F.Supp. 511 (D.Md. 1966). Despite the Journal's loose use of the word "murder," we think only "supersensitive persons, with morbid imaginations," Reid v. Providence Journal Co., *supra* at 122, 37 A. at 637, could discover in any of these articles the assertion that Lambert was guilty of murder.

Affirmed.

---

**7.** This differentiates the instant case from Commercial Pub. Co. v. Smith, *supra*. In that case the court held it was a jury question whether the following article was defamatory:

"Murderer Arrested.

Augusta, Ark., Feb. 10th.—Sheriff Marshal Patterson arrested Fred Smith, camped in a tent ten miles north of Augusta, on White river. Smith is wanted at Kennett, Mo., for killing old man F. E. Porch, the incentive being robbery. The state of Missouri offered $300, the county $200, and the citizens of Malden $600, for Smith's arrest. Smith does not deny being the man wanted, but claims he did not do the killing."

Describing the plaintiff as a murderer implicated him in the killing in a way the Journal's articles did not implicate Lambert here.

"Other cases, though persuasive, are rarely controlling [in libel actions] because of variations in the words used." Lane v. The Washington Daily News, 66 App.D.C. 245, 85 F.2d 822, 824 (1936). Moreover, *Smith* was decided nearly seventy years ago under federal common law. The trend has shifted towards restricting liability for defamation, W. Prosser, *supra* at 738–39, and we doubt the *Smith* result would be reached under present-day Massachusetts and Rhode Island libel law.

**8.** The context shows that the single use of the phrase "actual murder" in the last article served to distinguish the murder charge from the earlier accessory charge and could not be read to assert the conclusion that the killing was unlawful.