**John H. McCANN III**

v.

**SHELL OIL COMPANY.**

**No. 87–148–Appeal.**

Supreme Court of Rhode Island.

December 21, 1988.

Marty C. Marran, Pawtucket, for plaintiff.

Deming E. Sherman, Edward & Angell, Providence, for defendant.

## OPINION

MURRAY, Justice.

This case is an appeal from a Superior Court defamation action. The parties filed cross-motions for summary judgment. After a hearing, the trial justice granted the defendant's motion and denied the plaintiff's. We affirm.

The facts are uncontested. The plaintiff, John McCann, was and is a practicing Rhode Island attorney and a Shell Oil Company credit-card holder. At all times relevant to this litigation, McCann was in good standing as a Shell credit-card holder. On approximately July 15, 1986, the plaintiff received an item in the mail from the Shell Oil Company. This item is known as a "datamailer." It consists of several lightweight sheets of paper—an outside envelope covering and inside pieces of paper with data or a message enclosed. A picture of the datamailer appears in the appendix.

The datamailer was addressed to John H. McCann III at his home in Barrington, Rhode Island. Shell Oil Company was listed as the sender of the item at an Oklahoma address. Underneath the return address and running across the envelope was "Important: Reminder For Shell Credit Cardholder." Under the postage mark was "Please Return By: August 15, 1986." In boldface above McCann's address was "PRE–CANCELLATION NOTICE." The plaintiff's wife received this item in the mail, read the face of it, and became upset. She telephoned her husband and read the face of the datamailer to him, at which time he became upset. McCann maintains that the datamailer libeled him because it announced, at least to his wife and the mailperson, that McCann had failed to pay his credit-card bills.

The precancellation notice pertained to a complimentary credit-card "Hot-line V.I.P." service. In June 1985, Shell notified plaintiff in his monthly bill that he had been given free "Hot-line V.I.P." service for six months. This coverage would help to protect McCann against fraudulent use of his credit cards if they were lost or stolen. However, after the first six months or year of protection, the Hot-line service costs $15 annually. If a person agreed to pay the $15 fee after six months, then the free coverage lasted for only six months. If a person did not consent to pay for the Hot-line service after six months, then complimentary Hot-line service was extended for another six months. McCann never subscribed to the Hot-line service. In December of 1985, Shell extended McCann's free coverage for another six months. In July of 1986, Shell mailed the datamailer at issue to McCann to advise him that his Hot-line coverage would be canceled if he did not agree to pay $15 before August 15, 1986.

In our discussion, we shall consider two of the requisites of a defamation action. Defamation is an invasion of the interest in reputation and good name. Prosser and Keeton, *The Law of Torts*, § 111 at 771 (West 1984). Under Rhode Island law, the first essential element of a defamation action is that the alleged defamatory material be "a false and defamatory statement concerning another." *Lyons v. Rhode Island Public Employees Council 94*, 516 A.2d 1339, 1342 (R.I.1986) (quoting 3 Restatement (Second) *Torts*, § 558 (1977)). Under this definition, defamatory material is that which is false, in

the sense that the material contains or implies false facts, and that is defamatory, in the sense that the material imputes disgrace. Thus, to prevail in a defamation action, the first element a plaintiff must establish is that the alleged defamatory material, first, contains or implies a false statement of fact, and second, that the material defames. *See Healey v. New England Newspapers, Inc.*, 520 A.2d 147, 149–50 (R.I.1987); *Lyons*, 516 A.2d at 1342; 3 Restatement (Second) *Torts*, §§ 558, 566.

The threshold determination of whether the communication at issue is capable of bearing a defamatory meaning is a question of law to be decided by the court. *Healey*, 520 A.2d at 150; *Andoscia v. Coady*, 99 R.I. 731, 735, 210 A.2d 581, 584 (1965); 3 Restatement (Second) *Torts*, § 614. Words alleged to be defamatory must be considered in the context in which they appear. *Lyons*, 516 A.2d at 1343. The alleged defamatory language is not to be enlarged beyond the natural meaning of the words actually used. *Ogrodnick v. Providence Journal Co.*, 93 R.I. 316, 318, 175 A.2d 289, 291 (1961). Language is not to be forced or tortured in libel cases in order to make it actionable. *Reid v. Providence Journal Co.*, 20 R.I. 120, 37 A. 637 (1897). We now turn to a consideration of whether the datamailer is capable of bearing a defamatory meaning.

■ In the case at bar, we do not believe that the datamailer contained or implied a false statement of fact. On the front of the datamailer were: (1) McCann's name and address listed as recipient of the datamailer, (2) Shell Oil Company's name and address listed as sender, (3) "Important: Reminder For Shell Credit Cardholder," (4) "Please Return By: August 15, 1986," and (5) "PRE–CANCELLATION NOTICE." The statements appearing on the face of the datamailer communicate that something between McCann and Shell Oil Company was in a state of precancellation. However, we believe a reasonable interpretation of the notice does not indicate what that something is. Upon reading the face of the datamailer, one asks oneself "what's being cancelled?" Indeed, this lack of specificity as to what the datamailer pertained to was noted by the trial justice. Furthermore, it is true that something was in precancellation status: McCann's Hotline coverage. We hold that the datamailer did not communicate or imply false facts.

■ In regard to whether a communication is defamatory (in the sense of disgraceful), we have held that a statement is defamatory if it, first, imputes conduct that injuriously affects a person's reputation, or second, tends to degrade him or her in society, or third, bring him or her into public hatred and contempt. *Healey*, 520 A.2d at 149–50 (citing *Elias v. Youngken*, 493 A.2d 158, 161 (R.I.1985) quoting *Reid v. Providence Journal Co.*, 20 R.I. at 124–25, 37 A. at 638). Under Rhode Island law, the assertion that a person is insolvent or uncreditworthy is defamatory. *Andoscia v. Coady*, 99 R.I. at 736, 210 A.2d at 584. When applying these standards to the case at bar, we hold that the datamailer is not reasonably capable of imputing insolvency or uncreditworthiness to McCann.

■ The datamailer's message, that something between McCann and Shell Oil Company was in a state of precancellation, says very little about McCann. It does not impute insolvency or uncreditworthiness to him. A number of explanations as to that which is subject to precancellation are conceivable, such as a stock subscription, an insurance policy, investment services, retail services, a Shell credit card, or other transactions. However, any explanation is pure conjecture, and as such is a forced or tortured meaning. We surmise that the ambiguity of what is in precancellation status is meant to jolt the recipient of the datamailer into opening it. We believe that this marketing technique is ill-advised, and that perhaps Shell has allowed its marketing strategists to become too creative. However, the datamailer's announcement of precancellation is not capable of reasonably bearing the meaning that it applies to McCann's credit card or that he is insolvent. It also does not impute any conduct that injuriously affects McCann's reputation, or tends to degrade McCann in society, or bring him into public hatred and contempt. Accordingly, we hold that the face of the datamailer was not defamatory.

In considering a motion for summary judgment, the trial justice must determine whether there is a genuine issue of material fact. *Lawrence v. Anheuser–Busch, Inc.*, 523 A.2d 864, 867 (R.I.1987). If no genuine issue of material fact exists, the trial justice determines whether the moving party is entitled to judgment as a matter of law. *Id.* In the present case the trial justice correctly granted the defendant's motion for summary judgment.

We affirm the judgment of the Superior Court. The plaintiff's appeal is denied and dismissed. The papers in this case are remanded to the Superior Court