DECISION
This matter is before the Court for decision on the defendants' motions for summary judgment on plaintiff's complaint and defendants' counterclaim.
 FACTS
Plaintiff, Gerard S. Kempen ("Plaintiff") was the Town Manager for the defendant, Town of Middletown (the "Town") from July, 2003 until December, 2007. Plaintiff began to have conflicts with the Town Council and its president in November, 2004. Following a negative performance evaluation, and after the Town Council refused to give Plaintiff a raise in October, 2007, Plaintiff and the Town Council met in Executive Session regarding his separation from employment. Prior to the first Executive Session on November 19, 2007, the Town Council received a letter from Plaintiff's attorney regarding work environment concerns. After several executive sessions, the Town Council voted to enter into a separation agreement with Plaintiff at an executive session on November 26, 2007. Plaintiff and his attorney were present at this *Page 2 
session, where discussions and negotiations took place. The parties, subsequently, executed a Separation Agreement and Release (the "Agreement").
Under the Agreement, Plaintiff resigned and was paid a severance equal to seven month's salary ($61,109.56), as well as the Town contributing $6,722 to Plaintiff's 401(k) plan. The Town also agreed to continue to pay for Plaintiff's health care coverage for one year and gave Plaintiff other sums of money and property totaling over $25,000. The Town provided Plaintiff with a letter of recommendation. In return, Plaintiff agreed not to sue the Town in connection with his employment and termination. Both parties agreed to sign a non-disclosure provision, the violation of which by Plaintiff would result in forfeiture of salary and other benefits under the Agreement. Further, both the Town and Plaintiff agreed to a non-disparagement clause that provided that neither party shall "disparage" the other party "nor make any public statement critical of" the other.
Following the Agreement's execution, and after all sums and benefits were paid to Plaintiff pursuant to the Agreement, Plaintiff communicated to the Town Council by letter dated May 3, 2008. This letter stated that Plaintiff wished to make public the terms of the Agreement as well as other facts at a Town Council open meeting. Plaintiff also stated that he wished to explain his reasons for beginning the process that led to the Separation Agreement. The request by Plaintiff was placed on the Town Council docket for May 19, 2008. The Council members debated the issue.
Plaintiff, subsequently, filed this action alleging breach of contract and slander and libel. These charges were based on certain comments about Plaintiff allegedly made during the May 19, 2008 open meeting by individual defendants, Paul M. Rodrigues ("Rodrigues"), Shirley R. Mello ("Mello"), and Barbara A. Barrow ("Barrow"), who were members of the Middletown *Page 3 
Town Council. First, Plaintiff alleges that the non-disparagement clause of the Agreement was breached when Rodrigues remarked that Plaintiff "can't have his cake and eat it, too." Plaintiff also alleged that Barrow said Plaintiff "wants his cake and eat it, too." Plaintiff alleges that the Agreement was violated when Rodrigues stated that the Agreement was entered into to "protect the town" and to save it from "embarrassment." Lastly, Plaintiff alleges that Barrow and Mello made comments about his threats to sue. Plaintiff claims that Barrow stated that she "wondered whether [Plaintiff] had the Town's best interest at heart, especially after threatening to sue the [Town] before his departure." Mello allegedly commented that "[Plaintiff] threatened to sue the Town" and said, "you think he should be able to come forward and accuse and threaten to sue, without a response from us." Plaintiff claims that these comments violated the non-disparagement clause of the Agreement.
The Town and defendants (collectively, "Defendants") answered Plaintiff's complaint and, with their answer, filed a counterclaim against Plaintiff alleging that he had violated the Agreement (1) by attaching a copy of the Agreement to his complaint against the Town; and (2) by making disparaging and/or critical statements about the town and members of the Town Council through his complaint. The Defendants allege that Plaintiff's actions, individually and collectively, constitute a material breach of the Agreement.
Defendants filed a motion for summary judgment on Plaintiff's claims. Defendants also filed a motion for summary judgment on their counterclaim against Plaintiff.
 STANDARD OF REVIEW
"Summary judgment is a proceeding in which the proponent must demonstrate by affidavits, depositions, pleadings and other documentary matter . . . that he or she is entitled to judgment as a matter of law and that there are no genuine issues of material fact." Palmisciano v. Burrillville Racing Ass'n, *Page 4 603 A.2d 317, 320 (R.I. 1992). It is well settled that in ruling on a motion for summary judgment, the motion justice should construe all evidence in the light most favorable to the non-moving party.Sakonnet Point Marina Ass'n v. Bluff Head Corp.,798 A.2d 439, 441 (R.I. 2002); McKinnon v. Rhode Island Hosp.Trust Nat'l Bank, 713 A.2d 245, 247 (R.I. 1998). If, after considering the evidence, the motion justice concludes that there are no genuine issues of material fact and that the moving party is entitled to judgment as a matter of law, summary judgment is appropriate. Id. The non-moving party, however, cannot rest upon mere allegations or denials in pleadings, conclusory statements, or legal opinions. See Doe v. Gelineau,732 A.2d 43, 48 (R.I. 1999).
 ANALYSIS
I. Defendants' Motion for Summary Judgment on Plaintiff'sComplaint a. Did Defendants' Statements Disparage or CriticizePlaintiff?
Paragraph 11 of the Agreement states that "[t]he Town Council shall not disparage Kempen nor make any public statements critical of Kempen." Black's Law Dictionary defines "disparagement" as "[a] false and injurious statement that discredits or detracts from the reputation of another's property, product or business."Black's Law Dictionary 210 (2nd Pocket Edition, 2001). The Rhode Island Supreme Court has not yet defined the term "disparage," but in Halco v. Davey, 919 A.2d 626 (Me. 2007), the Supreme Judicial Court of Maine addressed the issue. In Halco, the court held that the plain and ordinary meaning of the words "disparage or discredit" require a specific attack on one's reputation or credibility. Halco, 919 A.2d at 630 (holding that a statement that a settlement was a payoff that only promotes more lawsuits and that defendants had "beaten this guy the whole way through," when viewed in a light most favorable to plaintiff, could establish injury to his reputation because the statements could be *Page 5 
understood as suggesting that his claim was frivolous). TheHalco court also cited Webster's Dictionary, and noted that the definition of disparage is "1. To speak of in a belittling way; decry. 2. To reduce in rank or esteem." Id. (citingWebster's II New Riverside Dictionary 387 (1984)). Further, the First Circuit Court of Appeals has held that "[d]isparage means, among other things, `to lower in rank and estimation by actions or words,' or `to speak slightingly of.'" Open Software Found.,Inc. v. U.S. Fidelity and Guar. Co.,307 F.3d 11, 20 (1st Cir. 2002) (citing Boston SymphonyOrchestra v. Commercial Union Ins. Co.,545 N.E.2d 1156, 1158 (1989) (quoting Webster's New InternationalDictionary of the English Language 750 (2d ed. 1959))).
Here, the statement the Plaintiff "can't have his cake and eat it, too" does not rise to the level of disparagement. Even viewing it in the light most favorable to the non-moving party, it is not a false and injurious statement that discredits or detracts from the reputation of Plaintiff's property, product or business. SeeBlack's Law Dictionary 210. Further, such words cannot be interpreted as speaking slightly of Plaintiff or lowering his rank. Instead, such words were used in a colloquial sense to describe the logistics of the situation presented to the Town Council. Plaintiff was asking the Town Council to permit him to collect the benefits of the Agreement — i.e. have his cake — but to not be bound by the confidentiality clause contained therein — i.e. eat his cake, too.
In addition, the statement that the Agreement was made to "protect the town" and to save it from "embarrassment," even when viewed in a light most favorable to Plaintiff, is not disparaging. These statements, if anything, indicate that the Town may have done something wrong and that it entered into an agreement to minimize such error(s). These statements cannot be seen as aspecific attack on Plaintiff's reputation or credibility.See Halco, 919 A.2d at 630. *Page 6 
Therefore, because no genuine issue of fact remains as to whether Defendants' comments were in fact disparaging so as to constitute a breach of the Agreement, Defendants' motion for summary judgment is granted on Count I (Breach of Contract) of Plaintiff's complaint.
b. Did Defendants Slander or Libel Plaintiff?
 1. Were the statements true?
In a defamation action, the plaintiff must prove "(a) a false and defamatory statement concerning another; (b) an unprivileged publication to a third party; (c) fault amounting at least to negligence on the part of the publisher; and (d) damages, unless the statement is actionable irrespective of special harm."Healey v. New England Newspapers, Inc.,555 A.2d 321, 324 (R.I. 1989) (citing Lyons v. Rhode Island Pub.Employees Council 94, 516 A.2d 1339, 1342 (R.I. 1986)). A defamatory statement has been defined as false and malicious words which tend to degrade a party in society or "bring him into public hatred or contempt." Elias v. Youngken,493 A.2d 158, 161 (R.I. 1985). To prove that a statement is defamatory, a plaintiff must show that the statement is "`false and malicious, imputing conduct which injuriously affects a [person's] reputation, or which tends to degrade him in society or bring him into public hated and contempt. . . ." Alves v. HometownNewspapers, Inc., 857 A.2d 743, 750 (R.I. 2004). The question of whether or not a statement is defamatory is a question of law for the court to decide. Id. In determining whether a statement or conduct is defamatory, the court must take into account "the context of the statement in which the publication occurs and the plain and ordinary meaning of the words in the community in which the publication occurred." Id. at 750-51.
Here, as Defendants argue, Plaintiff cannot satisfy the elements of a defamation action because Defendants' statements were not false. The statements that indicated that the Council acted to protect the Town referred to the lawsuit that Plaintiff threatened to commence if an *Page 7 
agreement was not reached. Further, both comments made by Plaintiff's attorney — at the November 26, 2007 Executive Session, as well as the December 4, 2007 letter written by Plaintiff's attorney — indicate that Plaintiff would take legal action if the matter was not resolved. Therefore, Defendants had reason to believe that such a lawsuit would be brought and Defendants' comments made reference to this potential lawsuit. Similarly, the comments referring to Plaintiff wanting to "have his cake and eat it too" are also true. Plaintiff was, in fact, seeking to reap the benefit of and to avoid the reciprocal burden placed upon him by the Agreement. Such words were not "false and defamatory statements" as a matter of law, and therefore, they did not defame Plaintiff.
2. Were Defendants' words, as a matter of law, defamatory?
When considering whether language is "defamatory" in nature, our Supreme Court has held that "language is not to be forced or tortured in libel cases in order to make it actionable. It is to be taken in its plain and ordinary sense." Elias,493 A.2d at 161 (R.I. 1985) (quoting Reid v. ProvidenceJournal, 20 R.I. 120, 122, 37 A. 637, 637 (1897)). InReid, our Supreme Court recognized that the same words that may not affect one person may indeed be exceedingly painful to another person. Therefore, the Reid court held that there
 must be some limit to liability for words not actionable per se, both as to the words and the kind of damages . . . the words must be defamatory in their nature, and must in fact disparage the character, and this disparagement must be evidenced by some positive loss arising therefrom directly and legitimately as a fair and natural result. Reid, 20 R.I. at 123, 37 A. at 638.
Thus, the Reid Court held that words which do not degrade the character do not injure it, and cannot occasion loss. Id.
Here, as stated above, the plain meaning of Rodrigues' statements regarding the protection of the Town and prevention of an embarrassment cannot be considered disparaging *Page 8 
and are true. As such, Plaintiff cannot successfully argue that these statements have caused him a personal and/or financial loss due to his harmed reputation as a matter of law. Therefore, as no genuine issue of fact exists as to whether Defendants' statements rise to the level of defamation, Defendants' motion for summary judgment is also granted on Count II (Libel and Slander) of Plaintiff's complaint.
3. Were Defendants' statements privileged?
While the Court has already granted summary judgment on Count II (Libel and Slander), it is important to discuss whether Defendants' statements were privileged, alternatively relieving them of liability.
i. Absolute Privilege
Statements made by high-ranking public employers acting within the scope of their authority and concerning public employees are generally protected as absolutely privileged communications. 50 Am. Jur. 2d Libel andSlander § 269 (citing LaVerdure v. County of Montgomery,324 F.3d 123 (3d Cir. 2003)). Statements made by public employees about public employees have also been deemed absolutely privileged in some instances connected to a quasi-judicial proceeding.Id. (citing Town of South Padre Island v. Jacobs,736 S.W.2d 134 (Tex.App.Corpus Christi 1986)). The protection of absolute privilege for defamation extends not only to high ranking officials but also to persons occupying inferior or subordinate positions. 50 Am. Jur. 2d. Libel andSlander § 271 (citing Heine v. Raus,399 F.2d 785, 33 A.L.R. 1318 (4th Cir. 1968)). The federal courts have been liberal in extending the protection of absolute privilege to persons occupying subordinate federal offices, and to federal employees, and a similar attitude has been evidenced by a number of state courts with respect to inferior state and local positions.Id. (citing e.g. Long v. Mertz,2 Ariz.App. 215, 407 P.2d 404 (1965); Block v. SacramentoClinical Labs, Inc., *Page 9 131 Cal. App. 3d 386, 182 Cal.Rptr. 438 (3d Dist. 1982);Saxon v. Knowles,185 So.2d 194 (Fla.Dist.Ct.App.4th Dist. 1966)).
In some instances, communications regarding discharged employees may be accorded an absolute privilege applicable to statements relating to grievance and arbitration proceedings under a collective bargaining agreement. 50 Am. Jur. 2d Libel andSlander § 311 (citing Green v. Hughes Aircraft Co.,630 F.Supp. 423 (S.D.Cal. 1985)). Specifically, an absolute privilege is often accorded to statements made by public officers in connection with the hiring or firing of employees where such officers are of the requisite dignity level and were acting in the proper performance or within the scope of their official duties in making such statements. Id.
The Rhode Island Supreme Court in Irons v. R.I. EthicsComm'n, 973 A.2d 1124 (R.I. 2009) said:
 This Court has interpreted the speech in debate clause to provide legislators with "absolute" immunity from questioning "by any other branch of government for their acts in carrying out their legislative duties relating to the legislative process." We wish to stress in the strongest possible terms, however, that it in no way grants a legislator the right to transgress the Code of Ethics or any other law. Legislators are held accountable for violations of the Code of Ethics, and they are not immune for actions which violate that code. The only exceptions are those in which the speech in debate clause of the constitution is implicated. The immunity afforded merely precludes [prosecution] within a narrow class of core legislative acts. Actions of legislators "in proposing, passing, or voting upon a particular piece of legislation" are core legislative acts that fall "clearly within the most basic elements of legislative privilege." In short, "as long as [a legislator's] challenged actions, stripped of all considerations of intent and motive, were legislative in character, the doctrine of absolute legislative immunity protects them from such claims." Irons, 973 A.2d at 1131 (internal citations omitted) (second alteration in original) (emphasis added).
Here, the Town Council acts as a legislature, and its members are, therefore, considered legislators. Consequently, when operating in their legislative roles, Council members are *Page 10 
entitled to absolute immunity. Here, however, Defendants are clearly not proposing, passing, or voting on any piece of legislation.See Irons, 978 A.2d at 1131 (quoting Holmes v. Farmer,475 A.2d 976, 984 (R.I. 1984)). Consequently, Defendants do not have an absolute privilege.
ii. Qualified Privilege
Defendants are entitled to a qualified privilege. The rule in some jurisdictions is that, except as to executive officers in the higher echelons of government, official reports and communications of state or local officers or employees are only qualified or conditionally privileged — that is, not actionable without proof of malice in fact, but actionable where such malice is shown. 50 Am. Jur. 2d.Libel and Slander § 271 (citing Bauer v. State,511 N.W.2d 447 (Minn. 1994); Scalise v. Herkimer Fulton, Hamiltonand Otsego County BOCES,16 A.D.3d 1059, 791 N.Y.S.2d 786 (4th Dept. 2005)). The Rhode Island Supreme Court has held that a "qualified privilege exists if the publisher makes the statements in good faith and `reasonably believes that he has a legal, moral or social duty to speak out, or that to speak out is necessary to protect either his own interests, or those of third person[s], or certain interests of the public.'"Mills v. C.H.I.L.D., 837 A.2d 714, 720 (R.I. 2003) (quotingPonticelli v. Mine Safety Appliance Co.,104 R.I. 549, 551, 247 A.2d 303, 305-06 (1968)) (alteration in original).
Here, it is clear that the Town Council members thought they had a duty to speak out to protect the Town's interest. Thus, Defendants have a qualified privilege. "To overcome such a qualified privilege, the plaintiff must prove that the person making the defamatory statements acted with ill will or malice." Id. (citingDiBiasio v. Brown Sharpe Mfg. Co., *Page 11 525 A.2d 489, 492 (R.I. 1987)). Consequently, the Court must turn to whether Defendants acted with malice.
4. Were Defendants' statements made with malice?
When a public figure brings an action for defamation relating to his official conduct, he must prove "that the statement was made with `actual malice' — that is, with knowledge that it was false or with reckless disregard of whether it was false or not."Cullen v. Auclair, 809 A.2d 1107, 1110 (R.I. 2002) (quotingNew York Times Co. v. Sullivan, 376 U.S. 254, 279-80 (1964)). A public figure defamation plaintiff meets the requisite burden of proof by demonstrating actual malice by clear and convincing evidence. Id. Where a defendant's statements are not factual, but are instead opinions about the situation, there is no such thing as a false idea. Id. Therefore, the "reckless or knowing falsity" test applied in defamation cases involving public figures is applicable when the contested statement is an idea or an opinion, rather than a fact.
Further, mere negligence does not suffice, and reckless conduct is not measured by whether a reasonably prudent person would have published or would have investigated before publishing. 50 Am. Jur. 2d Libel andSlander § 32 (citing Masson v. New Yorker Magazine, Inc.,50 U.S. 496 (1991); St. Amant v. Thompson,390 U.S. 727 (1968)). To establish reckless disregard as to whether a statement is false, a public official or public figure must prove that the publisher entertained serious doubts as to the truth of his or her publication. Id. (citing Huckabee v. Time WarnerEntertainment Co. L.P., 19 S.W.3d 413 (Tex. 2000)).
Here, Defendants correctly assert that Plaintiff has alleged no conduct that would suggest that the statements in issue were made with the requisite malice. "[O]nce a party files and serves a properly supported summary-judgment motion, an alarm bell begins to toll and it is time for the opposing parties either to put up their evidence or shut up their case." Wright v.Zielinski, 824 A.2d 494, *Page 12 
499 (R.I. 2003). Here, Plaintiff has failed to bring forth any evidence that the Defendants' statements were made with malice. For instance, Defendants' fear of being sued does not support the conclusion that Defendants knew or acted with reckless disregard of any alleged falsity with regard to their statements about Plaintiff threatening to sue the Town. Defendants' made such statements thinking that they were true, and thinking that they would help to resolve the issue before them. Thus, even viewing the evidence in the light most favorable to the non-moving party, Defendants' statements do not rise to the level of defamation because they lack the requisite malice.
c. Individual Liability of Each Council Member for Breach ofContract
Defendants contend that they cannot be individually liable for any alleged breach of the Separation Agreement because they were not parties to the contract. This argument is moot, however, because Defendants, Shawn Brown, Lynne Dible, Paul Rodrigues, Shirley Mello, and Barbara Barrow were only named in their official capacities. (See Pl.'s Compl. ¶¶ 2-7.) This Court notes, enpassant, that if Defendants were named in individual capacities, they would not be liable for either claim because Plaintiff has failed to allege that Defendants acted either outside the scope of their respective offices or if within the scope, acted in an arbitrary manner grossly abusing the lawful powers of their offices.See Scheuer v. Rhodes, 416 U.S. 232, 235 (1974) (holding that pleading such requirements are sufficient to hold state officials individually liable).
II. Defendants' Motion for Summary Judgment on theirCounterclaim
A principle of contract law is that once a contract is materially breached, the non-breaching party has no further duties under the contract. See Women's Dev. Corp. v. City of Central Falls, *Page 13 764 A.2d 151, 158 (R.I. 2001) ("A party's material breach of contract justifies the non-breaching party's subsequent nonperformance of its contractual obligations."). Further,
 A party may not insist upon the performance of a contract or a provision of it where that party is personally guilty of a material or substantial breach of that contract or provision. The other party's duty to perform is excused by a material failure to perform contractual obligations or a material breach. Therefore, in the case of bilateral contracts, if either party commits a material breach of the contract, the other party should be excused from the obligation to perform further. 17A Am. Jur. 2d Contracts § 685.
 However, "whether a party has substantially performed or materially breached its contractual obligations is usually a question of fact to be decided by the jury." Women's Dev. Corp., 764 A.2d at 158 (citing National Chain Co. v. Campbell, 487 A.2d 132, 135 (R.I. 1985)).
Here, as evidenced by the newspaper articles submitted by Plaintiff — and Defendants' own memoranda acknowledging that they made the statements in open session (see Defs.' Mem. on Summ. J. on Pl.'s Compl. at 5) — and viewed in a light favorable to the non-moving party, a disputed material fact exists as to whether Plaintiff violated the non-disclosure clause of the Agreement by filing suit.
Further, in contracting, the parties have deemed that disclosure of the Agreement is a material breach — Paragraph 10 of the Agreement states in pertinent part:
 The Town and Kempen shall not disclose the existence or substance of this Separation Agreement and Release, which is intended to serve as a confidential personnel record within the meaning of Rhode Island law, to any person or entity. . . . The terms of this paragraph are the essence of this Separation Agreement and Release, and any violation proven in a court of competent jurisdiction would constitute a material breach of this Separation Agreement and Release. . . . (emphasis added).
Thus, there is a disputed material fact as to whether Defendants breached the Agreement by disclosing the existence of the Agreement during open meetings. If Defendants' had in fact *Page 14 
materially breached the Agreement, Plaintiff would have been excused from his duties under the Agreement. See Women's Dev. Corp.,764 A.2d at 158. Accordingly, Defendants' motion for summary judgment on its counterclaim against Plaintiff is denied.
The Court notes that Plaintiff did not allege that Defendants breached the Agreement by disclosing the existence of it — only that they breached it by making disparaging remarks. (See Pl.'s Compl. ¶¶ 32-47.)
 CONCLUSION
For the foregoing reasons, Defendants' motion for summary judgment on Plaintiff's complaint is granted. Further, Defendants' motion for summary judgment on their counterclaim is denied.
Counsel shall prepare an order in conformance with this Decision.